# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.; STATE OF MICHIGAN, ex rel.; STATE OF CALIFORNIA, ex rel.; STATE OF CONNECTICUT, ex rel.; STATE OF FLORIDA, ex rel.; STATE OF ILLINOIS, ex rel.; STATE OF MASSACHUSETTS, ex rel.; STATE OF NEW YORK, ex rel.; STATE OF RHODE ISLAND, ex rel.; STATE OF TEXAS, ex rel.; GOVERNMENT OF PUERTO RICO, ex rel.

        Plaintiffs

and

MICHAEL ANGELO; MSP WB, LLC

        Plaintiffs - Appellants

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; AUTO CLUB ENTERPRISES INSURANCE GROUP; AUTO CLUB COUNTY MUTUAL INSURANCE COMPANY; AUTO CLUB FAMILY INSURANCE COMPANY; AUTO CLUB INDEMNITY COMPANY; AUTOMOBILE CLUB INTER-INSURANCE EXCHANGE; INTERINSURANCE EXCHANGE OF THE AUTO CLUB; MOTOR CLUB INSURANCE COMPANY; AUTO-OWNERS INSURANCE GROUP; ATLANTIC CASUALTY INSURANCE COMPANY; AUTO-OWNERS INSURANCE COMPANY; CALIFORNIA CAPITAL INSURANCE COMPANY; CONCORD GENERAL MUTUAL INSURANCE COMPANY; EAGLE WEST INSURANCE COMPANY; GREEN MOUNTAIN INSURANCE COMPANY, INC.; HOME-OWNERS INSURANCE COMPANY; MONTEREY INSURANCE COMPANY; NEVADA CAPITAL INSURANCE COMPANY; OWNERS INSURANCE COMPANY; PROPERTY-OWNERS INSURANCE COMPANY; SOUTHERN-OWNERS INSURANCE COMPANY; STATE MUTUAL INSURANCE COMPANY; SUNAPEE MUTUAL FIRE INSURANCE COMPANY; VERMONT

ACCIDENT INSURANCE COMPANY, INC.; BERKSHIRE HATHAWAY GROUP; GEICO CHOICE INSURANCE COMPANY; GEICO GENERAL INSURANCE COMPANY; GEICO INDEMNITY COMPANY; GEICO MARINE INSURANCE COMPANY; GEICO SECURE INSURANCE COMPANY; GENERAL REINSURANCE CORPORATION; GENERAL STAR INDEMNITY COMPANY; GENERAL STAR NATIONAL INSURANCE COMPANY; GENESIS INSURANCE COMPANY; GOVERNMENT EMPLOYEES INSURANCE COMPANY; MEDICAL PROTECTIVE COMPANY; MEDPRO RRG RISK RETENTION GROUP; MLMIC INSURANCE COMPANY; MOUNT VERNON FIRE INSURANCE COMPANY; MOUNT VERNON SPECIALTY INSURANCE COMPANY; NATIONAL FIRE & MARINE INSURANCE; NATIONAL INDEMNITY COMPANY; NATIONAL INDEMNITY COMPANY OF MID-AMERICA; NATIONAL INDEMNITY COMPANY OF THE SOUTH; NATIONAL LIABILITY & FIRE INSURANCE COMPANY; NORGUARD INSURANCE COMPANY; OAK RIVER INSURANCE COMPANY; OLD UNITED CASUALTY COMPANY; PLICO, INC.; PRINCETON INSURANCE COMPANY; RANDOR SPECIALITY INSURANCE COMPANY; REDWOOD FIRE & CASUALTY INSURANCE COMPANY; UNITED STATES LIABILITY INSURANCE GROUP; U.S. UNDERWRITERS INSURANCE COMPANY; WELLFLEET INSURANCE COMPANY; WELLFLEET NEW YORK INSURANCE COMPANY; WESTGUARD INSURANCE COMPANY; GEICO COUNTY MUTUAL INSURANCE COMPANY; CSAA INSURANCE GROUP; CSAA AFFINITY INSURANCE COMPANY; CSAA FIRE & CASUALTY INSURANCE COMPANY; CSAA GENERAL INSURANCE COMPANY; CSAA INSURANCE EXCHANGE; CSAA MIDATLANTIC INSURANCE COMPANY OF NEW JERSEY; MOBILITAS GENERAL INSURANCE COMPANY; ERIE INSURANCE GROUP; ERIE INSURANCE COMPANY; UNITRIN DIRECT PROPERTY & CASUALTY COMPANY; UNITRIN PREFERRED INSURANCE COMPANY; UNITRIN SAFEGUARD INSURANCE COMPANY; VALLEY PROPERTY & CASUALTY INSURANCE COMPANY; INFINITY PREFERRED INSURANCE COMPANY; INFINITY SECURITY INSURANCE COMPANY; KEMPER FINANCIAL INDEMNITY COMPANY; RESPONSE WORLDWIDE DIRECT AUTO INSURANCE COMPANY; RESPONSE WORLDWIDE INSURANCE COMPANY; UNITRIN ADVANTAGE INSURANCE COMPANY; WARNER INSURANCE COMPANY; LIBERTY MUTUAL GROUP, INC.; LIBERTY SURPLUS INSURANCE CORPORATION; LM GENERAL INSURANCE COMPANY; LM INSURANCE CORPORATION;

MIDWESTERN INDEMNITY COMPANY; MONTGOMERY MUTUAL INSURANCE COMPANY; NETHERLANDS INSURANCE COMPANY; OHIO CASUALTY INSURANCE COMPANY OHIO SECURITY INSURANCE COMPANY; ERIE INSURANCE COMPANY OF NEW YORK; ERIE INSURANCE EXCHANGE; ERIE INSURANCE PROPERTY & CASUALTY COMPANY; FLAGSHIP CITY INSURANCE COMPANY; FARMERS INSURANCE GROUP; 21ST CENTURY ASSURANCE COMPANY; 21ST CENTURY CENTENNIAL INSURANCE COMPANY; 21ST CENTURY INSURANCE COMPANY; 21ST CENTURY PREMIER INSURANCE COMPANY; BRISTOL WEST CASUALTY INSURANCE COMPANY; BRISTOL WEST INSURANCE COMPANY; BRISTOL WEST PREFERRED INSURANCE COMPANY; CIVIC PROPERTY AND CASUALTY COMPANY; COAST NATIONAL INSURANCE COMPANY; EXACT PROPERTY AND CASUALTY COMPANY; FARMERS INSURANCE COMPANIES; FARMERS INSURANCE COMPANY OF ARIZONA; FARMERS INSURANCE COMPANY OF IDAHO; FARMERS INSURANCE COMPANY OF OREGON; FARMERS INSURANCE COMPANY OF WASHINGTON; FARMERS INSURANCE EXCHANGE; FARMERS INSURANCE HAWAII, INC.; FARMERS INSURANCE OF COLUMBUS, INC.; FARMERS NEW CENTURY INSURANCE COMPANY; FARMERS SPECIALTY INSURANCE COMPANY; FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY; FIRE INSURANCE EXCHANGE; FOREMOST COUNTY MUTUAL INSURANCE COMPANY; FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN; FOREMOST LLOYDS OF TEXAS; FOREMOST PROPERTY AND CASUALTY INSURANCE COMPANY; FOREMOST SIGNATURE INSURANCE COMPANY; ILLINOIS FARMERS INSURANCE COMPANY; MID-CENTURY INSURANCE COMPANY; MID-CENTURY INSURANCE COMPANY OF TEXAS; NEIGHBORHOOD SPIRIT PROPERTY AND CASUALTY COMPANY; SECURITY NATIONAL INSURANCE COMPANY; TEXAS FARMERS INSURANCE COMPANY; TRUCK INSURANCE EXCHANGE; 21ST CENTURY ADVANTAGE INSURANCE COMPANY; 21ST CENTURY CASUALTY COMPANY; 21ST CENTURY INDEMNITY INSURANCE COMPANY; 21ST CENTURY NORTH AMERICAN INSURANCE COMPANY; 21ST CENTURY PACIFIC INSURANCE COMPANY; 21ST CENTURY PINNACLE INSURANCE COMPANY; AMERICAN PACIFIC INSURANCE COMPANY, INC.; KEMPER CORPORATION GROUP; ALLIANCE UNITED INSURANCE COMPANY; ALPHA PROPERTY & CASUALTY INSURANCE COMPANY; CAPITOL COUNTY MUTUAL

FIRE INSURANCE COMPANY; CHARTER INDEMNITY COMPANY; FINANCIAL INDEMNITY COMPANY; INFINITY ASSURANCE INSURANCE COMPANY; INFINITY AUTO INSURANCE COMPANY; INFINITY CASUALTY INSURANCE COMPANY; INFINITY COUNTY MUTUAL INSURANCE COMPANY; INFINITY INDEMNITY INSURANCE COMPANY; INFINITY INSURANCE COMPANY; INFINITY SAFEGUARD INSURANCE COMPANY; INFINITY SELECT INSURANCE COMPANY; INFINITY STANDARD INSURANCE COMPANY; KEMPER INDEPENDENCE INSURANCE COMPANY; MERASTAR INSURANCE COMPANY; MUTUAL SAVINGS FIRE INSURANCE COMPANY; OLD RELIABLE CASUALTY COMPANY; RESPONSE WORLDWIDE INSURANCE COMPANY; TRINITY UNIVERSAL INSURANCE COMPANIES; UNION NATIONAL FIRE INSURANCE COMPANY; UNITED CASUALTY INSURANCE COMPANY OF AMERICA; UNITRIN AUTO AND HOME INSURANCE COMPANY; UNITRIN COUNTY MUTUAL INSURANCE COMPANY; UNITRIN DIRECT INSURANCE COMPANY; ISO; USAA GENERAL INDEMNITY COMPANY; USAA COUNTY MUTUAL INSURANCE COMPANY; USAA CASUALTY INSURANCE COMPANY; UNITED SERVICES AUTOMOBILE ASSOCIATION; GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY; SELECT INSURANCE COMPANY; GULF UNDERWRITERS INSURANCE COMPANY; AMERICAN EQUITY INSURANCE COMPANY; UNITED STATES FIDELITY & GUARANTY COMPANY; TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; TRAVELERS PERSONAL SECURITY INSURANCE COMPANY; TRAVELERS PERSONAL INSURANCE COMPANY; TRAVELERS LLOYDS OF TEXAS INSURANCE COMPANY; TRAVELERS LLOYDS INSURANCE COMPANY; TRAVELERS INDEMNITY OF CONNECTICUT; OREGON AUTOMOBILE INSURANCE COMPANY; PEERLESS INDEMNITY INSURANCE COMPANY; PEERLESS INSURANCE COMPANY; SAFECO INSURANCE COMPANY OF AMERICA; SAFECO INSURANCE COMPANY OF ILLINOIS; SAFECO INSURANCE COMPANY OF INDIANA; SAFECO INSURANCE COMPANY OF OREGON; SAFECO LLOYDS INSURANCE COMPANY; SAFECO NATIONAL INSURANCE COMPANY; WAUSAU BUSINESS INSURANCE COMPANY; WAUSAU GENERAL INSURANCE COMPANY; WAUSAU UNDERWRITERS INSURANCE COMPANY; WEST AMERICAN INSURANCE COMPANY; LM PROPERTY &

CASUALTY INSURANCE COMPANY; MID-AMERICAN FIRE & CASUALTY COMPANY; NATIONAL INSURANCE ASSOCIATION; SAFECO SURPLUS LINES INSURANCE COMPANY; NATIONAL GENERAL GROUP; ADIRONDACK INSURANCE EXCHANGE; AGENT ALLIANCE INSURANCE COMPANY; CENTURY NATIONAL INSURANCE COMPANY; DIRECT GENERAL INSURANCE COMPANY; DIRECT GENERAL INSURANCE COMPANY OF MISSISSIPPI; DIRECT INSURANCE COMPANY; DIRECT NATIONAL INSURANCE COMPANY; IMPERIAL FIRE & CASUALTY INSURANCE COMPANY; INTEGON GENERAL INSURANCE CORPORATION; INTEGON CASUALTY INSURANCE COMPANY; INTEGON INDEMNITY CORPORATION; INTEGON NATIONAL INSURANCE COMPANY; INTEGON PREFERRED INSURANCE COMPANY; MIC GENERAL INSURANCE CORPORATION; MOUNTAIN VALLEY INDEMNITY COMPANY; NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY; NATIONAL GENERAL ASSURANCE COMPANY; NATIONAL GENERAL INSURANCE COMPANY; NATIONAL GENERAL PREMIER INSURANCE COMPANY; NATIONAL GENERAL INSURANCE ONLINE, INC.; NEW JERSEY SKYLANDS INSURANCE ASSOCIATION; NEW SOUTH INSURANCE COMPANY; STANDARD PROPERTY & CASUALTY INSURANCE COMPANY; ALLIED INSURANCE COMPANY OF AMERICA; ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY; AMCO INSURANCE COMPANY; COLONIAL COUNTY MUTUAL INSURANCE COMPANY; CRESTBROOK INSURANCE COMPANY; DEPOSITORS INSURANCE COMPANY; FREEDOM SPECIALTY INSURANCE COMPANY; HARLEYSVILLE INSURANCE COMPANY; HARLEYSVILLE INSURANCE COMPANY OF NEW JERSEY; HARLEYSVILLE INSURANCE COMPANY OF NEW YORK; HARLEYSVILLE LAKE STATES INSURANCE COMPANY; HARLEYSVILLE PREFERRED INSURANCE COMPANY; HARLEYSVILLE WORCESTER INSURANCE COMPANY; TRAVELERS INDEMNITY COMPANY OF AMERICA; TRAVELERS INDEMNITY COMPANY; TRAVELERS HOME & MARINE INSURANCE COMPANY; TRAVELERS EXCESS AND SURPLUS LINES COMPANY; TRAVELERS CONSTITUTION STATE INSURANCE COMPANY; TRAVELERS COMMERCIAL INSURANCE COMPANY; TRAVELERS COMMERICIAL CASUALTY COMPANY; TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA; TRAVELERS CASUALTY COMPANY OF CONNECTICUT; TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA; TRAVELERS CASUALTY &

SURETY COMPANY; TRAVCO INSURANCE COMPANY; TRAVELERS CASUALTY COMPANY; STANDARD FIRE INSURANCE COMPANY; ST. PAUL SURPLUS LINES INSURANCE COMPANY; ST. PAUL PROTECTIVE INSURANCE COMPANY; ST. PAUL MERCURY INSURANCE COMPANY; ST. PAUL GUARDIAN INSURANCE COMPANY; ST. PAUL FIRE AND MARINE INSURANCE COMPANY; PHOENIX INSURANCE COMPANY; NORTHLAND INSURANCE COMPANY; NORTHLAND CASUALTY COMPANY; NORTHFIELD INSURANCE COMPANY; FIRST FLORIDIAN AUTO AND HOME INSURANCE COMPANY; FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC.; FIDELITY AND GUARANTY INSURANCE COMPANY; NATIONAL CASUALTY COMPANY; NATIONAL AFFINITY INSURANCE COMPANY OF AMERICA; NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; NATIONWIDE ASSURANCE COMPANY; NATIONWIDE GENERAL INSURANCE COMPANY; NATIONWIDE INSURANCE COMPANY OF AMERICA; NATIONWIDE INSURANCE COMPANY OF FLORIDA; NATIONWIDE LLOYDS; NATIONWIDE MUTUAL FIRE INSURANCE COMPANY; NATIONWIDE MUTUAL INSURANCE COMPANY; NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY; SCOTTSDALE INDEMNITY COMPANY; SCOTTSDALE INSURANCE COMPANY; SCOTTSDALE SURPLUS LINES INSURANCE COMPANY; TITAN INSURANCE COMPANY; VICTORIA FIRE AND CASUALTY COMPANY; VICTORIA SELECT INSURANCE COMPANY; PROGRESSIVE GROUP; ASI LLOYDS; ASI PREFERRED INSURANCE CORPORATION; ASI SELECT INSURANCE CORPORATION; BLUE HILL SPECIALITY INSURANCE COMPANY; DRIVE NEW JERSEY INSURANCE COMPANY; MOUNTAIN LAUREL ASSURANCE COMPANY; NATIONAL CONTINENTAL INSURANCE COMPANY; PROGRESSIVE ADVANCED INSURANCE COMPANY; PROGRESSIVE AMERICAN INSURANCE COMPANY; PROGRESSIVE BAYSIDE INSURANCE COMPANY; PROGRESSIVE CASUALTY INSURANCE COMPANY; PROGRESSIVE CLASSIC INSURANCE COMPANY; PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY; FARMINGTON CASUALTY COMPANY; DISCOVER SPECIALTY INSURANCE COMPANY; DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY; CHARTER OAK FIRE INSURANCE COMPANY; AUTOMOBILE INSURANCE COMPANY OF HARTFORD, CT; AMERICAN EQUITY SPECIALITY INSURANCE COMPANY; TRAVELERS GROUP; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM

LLOYDS; STATE FARM INDEMNITY COMPANY; STATE FARM GUARANTY INSURANCE COMPANY; STATE FARM GENERAL INSURANCE COMPANY; STATE FARM FLORIDA INSURANCE COMPANY; STATE FARM FIRE & CASUALTY COMPANY; PROGRESSIVE DIRECT INSURANCE COMPANY; PROGRESSIVE EXPRESS INSURANCE COMPANY; PROGRESSIVE GARDEN STATE INSURANCE COMPANY; PROGRESSIVE GULF INSURANCE COMPANY; PROGRESSIVE HAWAII INSURANCE COMPANY; PROGRESSIVE MARATHON INSURANCE COMPANY; PROGRESSIVE MAX INSURANCE COMPANY; PROGRESSIVE MICHIGAN INSURANCE COMPANY; PROGRESSIVE MOUNTAIN INSURANCE COMPANY; PROGRESSIVE NORTHERN INSURANCE COMPANY; PROGRESSIVE NORTHWESTERN INSURANCE COMPANY; PROGRESSIVE PALOVERDE INSURANCE COMPANY; PROGRESSIVE PREFERRED INSURANCE COMPANY; PROGRESSIVE PREMIER INSURANCE COMPANY OF ILLINOIS; PROGRESSIVE PROPERTY INSURANCE COMPANY; PROGRESSIVE SECURITY INSURANCE COMPANY; PROGRESSIVE SELECT INSURANCE COMPANY; PROGRESSIVE SOUTHEASTERN INSURANCE COMPANY; PROGRESSIVE SPECIALTY INSURANCE COMPANY; PROGRESSIVE UNIVERSAL INSURANCE COMPANY; PROGRESSIVE WEST INSURANCE COMPANY; UNITED FINANCIAL CASUALTY COMPANY; ASI HOME INSURANCE CORPORATION; ASI SELECT AUTO INSURANCE COMPANY; DOVER BAY SPECIALITY INSURANCE COMPANY; HIROAD ASSURANCE COMPANY; STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS; STATE FARM FIRE & CASUALTY COMPANY

Defendants - Appellees.

On Appeal from the United States District Court
for Eastern District of Michigan, Southern Division
Hon. Denise Page Hood
Case No. 2:19-cv-12165

**CORRECTED APPELLANTS' BRIEF**

Shereef H. Akeel (P54345)
Adam S. Akeel (P81328)
Samuel R. Simkins (P81210)
Daniel Cermak (P84460)
Emad R. Hamadeh (P86849)
Hayden E. Pendergrass (P86888)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com
Daniel@akeelvalentine.com

John W. Cleary (Fla. Bar No. 118137)
Ryan H. Susman, (Fla. Bar No. 1010444)
MSP RECOVERY LAW FIRM
2701 S. LeJeune Road, Tenth Floor
Coral Gables, Florida 33134
(305) 614-2222
jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com

J. Alfredo Armas (Fla. Bar. No. 360708)
ARMAS BERTRAN ZINCONE
2701 S. LeJeune Road, Tenth Floor
Coral Gables, Florida 33134
(305) 461-5100
alfred@armaslaw.com

*Counsel for Plaintiffs-Appellants*

**ORAL ARGUMENT REQUESTED**

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-1379

Case Name: U.S. et al., ex rel. Angelo; MSP WB, LLC v. State Farm Mut. Auto. Ins. Co. et al.

Name of counsel: Shereef H. Akeel

Pursuant to 6th Cir. R. 26.1, Michael Angelo
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

   No.

## CERTIFICATE OF SERVICE

I certify that on ___May 15, 2024___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Shereef H. Akeel

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure**.  With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement.  A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed**.

(1)  Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal.  A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2)  Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure**.  The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-1379     Case Name: U.S. et al., ex rel. Angelo; MSP WB, LLC v. State Farm Mut. Auto. Ins. Co. et al.

Name of counsel: Shereef H. Akeel

Pursuant to 6th Cir. R. 26.1, MSP WB, LLC
*Name of Party*

makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> Yes. Plaintiff, MSP WB, LLC, is a Delaware limited liability company. MSP Recovery, LLC, a Florida limited liability company, is the sole member of MSP WB, LLC. MSP Recovery, LLC's sole member is Lionheart II Holdings, LLC, a Delaware limited liability company. Lionheart II Holdings, LLC's parent company is MSP Recovery, Inc. d/b/a LifeWallet, a publicly traded Delaware corporation, which owns 10% or more of the membership interest of Lionheart II Holdings, LLC. Except as stated above, there is no publicly held corporation that owns 10% or more of the stock of the entities listed above.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No. Please see answer to question 1.

---

## CERTIFICATE OF SERVICE

I certify that on _____ May 15, 2024 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Shereef H. Akeel

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# 6th Cir. R. 26.1
## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

(a) **Parties Required to Make Disclosure**. With the exception of the United States government or agencies thereof or a state government or agencies or political subdivisions thereof, all parties and amici curiae to a civil or bankruptcy case, agency review proceeding, or original proceedings, and all corporate defendants in a criminal case shall file a corporate affiliate/financial interest disclosure statement. A negative report is required except in the case of individual criminal defendants.

(b) **Financial Interest to Be Disclosed**.

(1) Whenever a corporation that is a party to an appeal, or which appears as amicus curiae, is a subsidiary or affiliate of any publicly owned corporation not named in the appeal, counsel for the corporation that is a party or amicus shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the parent corporation or affiliate and the relationship between it and the corporation that is a party or amicus to the appeal. A corporation shall be considered an affiliate of a publicly owned corporation for purposes of this rule if it controls, is controlled by, or is under common control with a publicly owned corporation.

(2) Whenever, by reason of insurance, a franchise agreement, or indemnity agreement, a publicly owned corporation or its affiliate, not a party to the appeal, nor an amicus, has a substantial financial interest in the outcome of litigation, counsel for the party or amicus whose interest is aligned with that of the publicly owned corporation or its affiliate shall advise the clerk in the manner provided by subdivision (c) of this rule of the identity of the publicly owned corporation and the nature of its or its affiliate's substantial financial interest in the outcome of the litigation.

(c) **Form and Time of Disclosure**. The disclosure statement shall be made on a form provided by the clerk and filed with the brief of a party or amicus or upon filing a motion, response, petition, or answer in this Court, whichever first occurs.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................14

STATEMENT OF JURISDICTION.......................................................................19

STATEMENT OF ISSUES FOR REVIEW ..........................................................19

STATEMENT OF THE CASE ..............................................................................19

SUMMARY OF THE ARGUMENT ....................................................................26

ARGUMENT ........................................................................................................27

   I.   STANDARD OF REVIEW.........................................................................27

   II.  THE DISTRICT COURT ERRED IN GRANTING APPELLEES'
       OMNIBUS MOTION TO DISMISS ........................................................28

     A.The District Court Erred in Finding that Appellants Did Not Adequately
        Allege Reverse FCA Violations ...................................................................28

     B.Appellants Satisfied (and Can Satisfy) Rule 9(b) for Their Federal & State
        Claims ...........................................................................................................29

     C.Appellants Sufficiently Alleged (and Can Allege) the Insurer Defendants'
        Obligations to Reimburse Government Health Plans and Their Contractors
        ………………………………………………………………………36

   III. THE DISTRICT COURT ERRED IN FINDING THAT THE PUBLIC
       DISCLOSURE BAR BARRED APPELLANTS' CLAIMS ....................47

     A.Appellants' Allegations Were Not Previously Disclosed and Are Not
        Substantially Similar to the Purported Prior Public Disclosures...................47

     B.  Appellants Are Original Sources.................................................................60

   IV. THE DISTRICT COURT ERRED IN FINDING THAT APPELLANTS DID
       NOT ADEQUATELY ALLEGE A CONSPIRACY .................................67

CONCLUSION .....................................................................................................69

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allison Engine Co. v. U.S. ex rel. Sanders*,
    553 U.S. 662 (2008) ...................................................................... 34, 35

*Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*,
    190 F.3d 729 (6th Cir. 1999)............................................................. 35

*Bellevue v. Universal Health Servs. of Hartgrove, Inc.*,
    867 F.3d 712 (7th Cir. 2017)....................................................... 46, 54

*Cause of Action v. Chi. Transit Auth.*,
    815 F.3d 267 (7th Cir. 2016)............................................................. 46

*Chesbrough v. VPA, P.C.*,
    655 F.3d 461 (6th Cir. 2011).............................................................. 35

*Cook County v. U.S. ex rel. Chandler*,
    538 U.S. 119 (2003) .......................................................................... 45

*Info-Hold, Inc. v. Sound Merch., Inc.*,
    538 F.3d 448 (6th Cir. 2008)............................................................. 25

*Integra Med Analytics LLC v. Providence Health & Servs.*,
    854 F. App'x 840 (9th Cir. 2021) ............................................... 27, 32

*Kane ex rel. U.S. v. Healthfirst, Inc.*,
    120 F. Supp. 3d 370 (S.D.N.Y. 2015).............................................. 37

*Leveski v. ITT Educ. Servs., Inc.*,
    719 F.3d 818 (7th Cir. 2013)............................................................. 47

*Me. Cmty. Health Options v. United States*,
    590 U.S. 296 (2020) .......................................................................... 48

*Newberry v. Silverman*,
    789 F.3d 636 (6th Cir. 2015)...................................... 24, 42, 43, 67

*Phone Recovery Servs., LLC v. Verizon Wash., DC, Inc.*,
    191 A.3d 309 (D.C. 2018)................................................................. 53

*Singleton v. Wulff*,
    428 U.S. 106 (1976) .......................................................................... 45

*State Farm Mut. Auto. Ins. Co. v. Angelo*,
    95 F.4th 419 (6th Cir. 2024) ............................................................ 20

*U.S. v. Robinson*,
    705 F. App'x 458 (6th Cir. 2017) .................................................... 27

*U.S. ex rel. Angelo v. Allstate Ins. Co.*,
106 F.4th 441 (6th Cir. 2024) ........................................................... 42
*U.S. ex rel. Armes v. Garman*,
719 F. App'x 459 (6th Cir. 2017) .................................................... 46
*U.S. ex rel. Bassan v. Omnicare, Inc.*,
2021 WL 1063784 (S.D.N.Y. Mar. 19, 2021) ............................. 36, 37
*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007)........................................ 24, 27, 30, 31
*U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*,
839 F.3d 242 (3d Cir. 2016)........................................................ 27, 32
*U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*,
562 F.3d 295 (4th Cir. 2009)............................................................ 39
*U.S. ex rel. Fry v. Health All. of Greater Cincinnati*,
2009 WL 1324164 (S.D. Ohio May 12, 2009) ................................. 45
*U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*,
680 F.3d 933 (7th Cir. 2012)............................................................ 60
*U.S. ex rel. Heath v. Wis. Bell, Inc.*,
92 F.4th 654 (7th Cir. 2023) ............................................................ 39
*U.S. ex rel. Heller v Guardian Pharm. of Atlanta, LLC*,
2023 U.S. Dist. LEXIS 207629 (N.D. Ga. Sept. 30, 2023) ............... 38
*U.S. ex rel. Hendrickson v. Bank of Am.*, N.A.,
343 F. Supp. 3d 610 (N.D. Tex. 2018) ............................................ 35
*U.S. ex rel. Holloway v. Heartland Hospice*,
960 F.3d 836 (6th Cir. 2020)....................................................... 47, 48
*U.S. ex rel. Holloway v. Heartland Hospice, Inc.*,
386 F. Supp. 3d 884 (N.D. Ohio 2019)............................................ 60
*U.S. ex rel. Howard v. Lockheed Martin Corp.*,
499 F. Supp. 2d 972 (S.D. Ohio 2007) ............................................ 43
*U.S. ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*,
816 F. App'x 892 (5th Cir. 2020) ........................................ 27, 32, 33
*U.S. ex rel. Martinez v. Orange Cnty. Global Med. Ctr., Inc.*,
2017 WL 9482462 (C.D. Cal. Sept. 14, 2017) ................................. 38
*U.S. ex rel. Mason, v. State Farm Mut. Auto. Ins.*,
2008 WL 2857372 (D. Idaho July 23, 2008) ........................ 33, 34, 35
*U.S. ex rel. Maur v. Hage-Korban*,
981 F.3d 516 (6th Cir. 2020)....................................................... 57, 58
*U.S. ex rel. Maur v. Hage-Korban*,
2020 WL 912753 (W.D. Tenn. Feb. 25, 2020)................................. 46
*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3d Cir. 2016)........................................................ 47, 48

*U.S. ex rel. Ormsby v. Sutter Health*,
  444 F. Supp. 3d 1010 (N.D. Cal. 2020) ............................................................ 37
*U.S. ex rel. Poteet v. Medtronic, Inc*.,
  552 F.3d 503 (6th Cir. 2009) ............................................................................ 46
*U.S. ex rel. Rahimi v. Rite Aid Corp.*,
  3 F.4th 813 (6th Cir. 2021) .............................................................................. 24
*U.S. ex rel. Reed v. Keypoint Gov't*,
  923 F.3d 729 (10th Cir. 2019) ................................................................ 58, 59, 60
*U.S. ex rel. Shank v. Lewis Enters*.,
  2006 WL 1207005 (S.D. Ill. May 3, 2006) ...................................................... 39
*U.S. ex rel. Shupe v. Cisco Sys.*,
  759 F.3d 379 (5th Cir. 2014) ............................................................................ 39
*U.S. ex rel. Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ................................................................ 28, 29, 32
*U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*,
  532 F.3d 496 (6th Cir. 2008) ............................................................................ 44
*U.S. ex rel. SW Challenger, LLC v. EviCore Healthcare MSI, LLC*,
  2021 WL 3620427 (S.D.N.Y. Aug. 13, 2021) .................................................. 38
*U.S. ex rel. Tran v. Computer Scis. Corp.*,
  53 F. Supp. 3d 104 (D.D.C. 2014) .................................................................... 43
*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
  827 F.3d 201 (1st Cir. 2016) ............................................................................ 59
*U.S. ex rel. Heath v. Wis. Bell*,
  760 F.3d 688 (7th Cir. 2014) ............................................................................ 55
*U.S. ex rel. Zafirov v. Fla. Med. Assocs. LLC*,
  2022 WL 4134611 (M.D. Fla. Sept. 12, 2022) ................................................ 39
*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003) .......................................................................... 51
*United States v. Caremark, Inc.*,
  634 F.3d 808 (5th Cir. 2011) ............................................................................ 36
*United States v. Chattanooga-Hamilton County Hosp. Auth.*,
  782 F.3d 260 (6th Cir. 2015) ............................................................................ 46
*United States v. Ferguson*,
  681 F.3d 826 (6th Cir. 2012) ............................................................................ 17
*United States v. Fowler*,
  819 F.3d 298 (6th Cir. 2016) ............................................................................ 25
*United States v. Life Care Ctrs. of Am., Inc.*,
  114 F. Supp. 3d 549 (E.D. Tenn. 2014) ............................................................ 27
*United States v. Murphy*,
  937 F.2d 1032 (6th Cir. 1991) ................................................................... 65, 66

*United States v. Toyobo Co.*,
811 F. Supp. 2d 37 (D.D.C. 2011) ...................................................... 43
*United States v. United Techs. Corp.*,
626 F.3d 313 (6th Cir. 2010) ............................................................. 35
*Whalen v. Stryker Corp.*,
783 F. Supp. 2d 977 (E.D. Ky. 2011) ........................................... 27, 30
*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012) ........................................................ 27, 31
*Yuhasz v. Brush Wellman, Inc.*,
341 F.3d 559 (6th Cir. 2003) ............................................................. 26

Statutes

28 U.S.C. § 1291 ..................................................................................... 16
28 U.S.C. §§ 1331 and 1345 .................................................................. 16
31 U.S.C. § 729(a)(1)(c) ........................................................................ 65
31 U.S.C. § 3729 ..................................................................................... 16
31 U.S.C. § 3729(a)(1)(A) and (B) .................................................. 41, 42
31 U.S.C. § 3729(a)(1)(G) ...................................................................... 37
31 U.S.C. § 3729(a)(1)(G) and (C) ......................................................... 17
31 U.S.C. § 3730 ..................................................................................... 46
31 U.S.C. § 3730(e)(4)(A) ................................................................ 19, 57
31 U.S.C. § 3732(a) ................................................................................ 16
31 U.S.C § 3729(a)(1)(A)-(B) ................................................................ 20
31 U.SC. 3729(a)(2) ............................................................................... 34
42 U.S.C. § 1320a-7b ............................................................................. 37
42 U.S.C. § 1320a-7k(d)(4)(B) .............................................................. 37
42 U.S.C. § 1395w-23(f) ........................................................................ 39
42 U.S.C. § 1395w-24(a)(6) ............................................................. 56, 57
42 U.S.C. § 1395y(b) ................................................................... 17, 18, 19

Rules

Fed. R. App. P. 32(a)(5) .......................................................................... 69
Fed. R. App. P. 32(a)(6) .......................................................................... 69
Fed. R. App. P. 32(a)(7)(B)(iii) .............................................................. 69
Fed. R. App. P. 32(g)(1)(C) ..................................................................... 69
Fed. R. Civ. P. 9(b) ........................................................................*Passim*
Fed. R. Evid. 801(d)(2) ........................................................................... 40

Regulations

42 C.F.R. § 422.254 ................................................................................. 39

42 C.F.R. § 422.304(a)(1) ........................................................................ 39

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. Appellants believe that oral argument would be appropriate to clarify any factual discrepancy, and further persuade this Court as to how the district court erred in dismissing this case.

## STATEMENT OF JURISDICTION

The district court's subject matter jurisdiction was based on 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331 and 1345. The basis of this Court's jurisdiction is 28 U.S.C. § 1291. On March 26, 2024, the district court entered an order granting Appellees' omnibus motion to dismiss and motion for judicial notice; denying Appellant MSP WB, LLC's amended motion for leave to file a second amended complaint; denying as moot several other motions; and dismissing the cause of action. A timely notice of appeal was filed on April 23, 2024.

## STATEMENT OF ISSUES FOR REVIEW

I.    Whether the district court erred in granting Appellees' omnibus motion to dismiss.

## STATEMENT OF THE CASE

On July 24, 2019, Appellant Michael Angelo filed a *qui tam* complaint under seal, as a relator on behalf of the United States and the State of Michigan, bringing claims under *inter alia* the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against State Farm Mutual Automobile Insurance Company ("State Farm") for failing to reimburse Medicare and Medicaid pursuant to the Medicare Secondary

Payer Act ("MSP Act"). (Compl., R.1). On March 9, 2021, the Government and the State of Michigan declined to intervene. (First Notice of Election, R.17). On April 6, 2021, the district court unsealed the complaint. (First Unsealing Order, R.18).[1]

On June 8, 2021, an Amended Complaint was filed under seal, which added Appellant MSP WB, LLC ("MSP WB") as a co-relator, on behalf of the United States; the States of California, Connecticut, Florida, Illinois, Massachusetts, Michigan, New York, Ohio, Rhode Island, and Texas; and the Government of Puerto Rico, against State Farm and over 300 other insurance companies ("Insurer Defendants").[2] (Am. Compl., R.20). Appellants brought claims under 31 U.S.C. § 3729(a)(1)(G) and (C) (as well as under state law FCA analogs), alleging that the Insurer Defendants conspired with Appellee Insurance Services Office, Inc. ("ISO") to systematically fail to completely and accurately satisfy their Section 111[3]

---

[1] Shortly thereafter, State Farm filed a motion to enforce a settlement agreement that had been entered between State Farm and Mr. Angelo in a collateral action involving RICO allegations against Mr. Angelo ("RICO Case") before the Eastern District of Michigan ("RICO Court"). (*See* CM/ECF for E.D. Mich., *State Farm Mut. Auto. Ins. Co. v. Angelo*, Case No. 2:19-cv-10669 ("RICO Case Docket"), ECF No. 118). State Farm specifically sought dismissal of this *qui tam* action under the settlement agreement. (*Id.*). This Court may take judicial notice of the docket in the RICO Case. *See United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012).

[2] For ease of identification, individual groups of Insurer Defendants will be referred to herein consistent with the groupings contained in Appellants' Notice of Appellees filed with this Court. (*See* Dkt. Entry 98).

[3] Section 111, Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA"), 42 U.S.C. § 1395y(b).

reporting requirements and, thereby, defraud Medicare and Medicaid of billions of dollars in reimbursements under the MSP Act. (*See id*.)

In August 2021, the Government and all States declined to intervene. (Second Notice of Election, R.22). On August 11, 2021, the district court ordered the Amended Complaint unsealed and served on the named defendants. (Second Unsealing Order, R.24)

On December 15, 2021, Appellees filed the only motion to dismiss briefing in this case, an omnibus motion to dismiss and a motion for judicial notice.[4] (Omnibus Mot. to Dismiss, R.338; Omnibus Mot. for Judicial Notice, R.339). Appellees contended that, for the Insurer Defendants for which Appellants did not allege representative examples or exemplars, Appellants had failed to plead with particularity under Rule 9(b). (*See id.*, Page ID #2009-2011). Appellees also contended that, for those Insurer Defendants for which exemplars were alleged,[5] Appellants failed to adequately plead an obligation to the Government, false statements, or scienter to support Appellants' reverse false claim allegations. (*See*

_____

[4] Several groups of Appellees also filed supplemental briefs/motions to dismiss. (*See* Suppl. Brs. & Mots. to Dismiss, R.329, R.330, R.331, R.332, R.333, R.334, R.335, R.340, R.341).

[5] Specifically, Appellants alleged exemplars for the Auto Club Enterprise Insurance Group Defendants; Berkshire Hathaway Group Defendants; Progressive Group Defendants; State Farm Group Defendants; Erie Insurance Group Defendants; Kemper Corporation Group Defendants; Liberty Mutual Group Defendants; Nationwide Corporation Group Defendants; and Travelers Group Defendants. (*See* Am. Compl., R.20, Page ID #486-503).

*id.*, Page ID #2011-2021). Additionally, Appellees alleged that Appellants failed adequately plead a conspiracy; that the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), barred Appellants' claims; and that Appellants failed to adequately plead their state law claims. (*See id.*, Page ID #2021-2041).

On February 15, 2022, Appellants responded to the omnibus motion. (Response to Omnibus Mot., R.376).[6] On March 17, Appellees filed their reply. (Omnibus Mot. Reply, R.390).[7]

On December 7, the district court held a hearing on the motion to dismiss. At the hearing, the district court specifically queried whether Appellants would file a further amended complaint to address the purported deficiencies raised by Appellees' motion. (Mot. Hr'g Tr., R.423, Page ID #5368). In response, Appellants noted that this was Appellees' first motion to dismiss challenging the allegations in the Amended Complaint and stated that, if the district court deemed it necessary,

---

[6] Around this time, the RICO Court granted State Farm's motion to enforce the settlement agreement on February 28, 2022. (*See* RICO Case Docket, ECF No. 149). Mr. Angelo subsequently moved for reconsideration and moved for a stay, (*see* RICO Case Docket, ECF Nos. 150, 151), which the RICO Court denied on May 2, 2022, (*see* RICO Case Docket, ECF No. 157). Mr. Angelo promptly filed a notice of appeal. (*See* RICO Case Docket, ECF No. 158).

[7] During the pendency of Mr. Angelo's appeal, during which State Farm and Mr. Angelo engaged in this Court's mediation program, State Farm filed a second motion to enforce, on June 16, 2022, seeking the filing of a motion for voluntary dismissal of the instant *qui tam* action. (*See* RICO Case Docket, ECF No. 163).

Appellants would certainly file a second amended complaint to correct any deficiencies identified by the district court. (*See id.*, Page ID #5369).

In an abundance of caution, on December 22, MSP WB[8] filed an amended motion for leave to file a Second Amended Complaint ("SAC"). (Am. Mot. for Leave to Amend, R.426). Specifically, the proposed SAC added *inter alia* allegations regarding the Insurer Defendants' conspiracy with ISO, (*see* Proposed SAC, R.426-1, Page ID #6574-6580, 6586-6587); the details of MSP WB's direct, independent, and material knowledge of the Insurer Defendants' failure to report under Section 111, (*see id.*, Page ID #6449-6450, 6580-6583); new and updated MSP WB exemplars, (*see id.*, Page ID #6613-6639); and a claim under 31 U.S.C § 3729(a)(1)(A)-(B), (*see id.*, Page ID #6588-6593).

On April 22, 2023, pursuant to the RICO Court's order,[9] Mr. Angelo filed the State Farm-drafted Request for Consent to dismiss Mr. Angelo's claims against the State Farm Group Defendants and a related notice. (Request for Consent, R.455; Angelo Notice of RICO Case Order, R.456). MSP WB also filed a notice objecting

---

[8] MSP WB unilaterally filed the amended motion, as Mr. Angelo was under a disputed court order, enjoining him from taking further actions in the instant *qui tam* action.

[9] On March 5, 2024, this Court has since affirmed the RICO Court's orders. *See State Farm Mut. Auto. Ins. Co. v. Angelo*, 95 F.4th 419 (6th Cir. 2024). After this Court denied rehearing *en banc*, Mr. Angelo filed a petition for writ of certiorari to the Supreme Court. *See Angelo v. State Farm Mut. Auto. Ins. Co.*, Case No. 24-9 (U.S. July 3, 2024).

to any potential dismissal of the State Farm Group Defendants from the case entirely. (MSP Obj. to Request for Consent, R.457).

On April 28, 2023, the State Farm Defendants filed a response to the notices filed by Mr. Angelo and MSP WB. (Response to Notices, R.460). In response, on May 5, 2023, MSP WB moved to strike the State Farm Group Defendants' response. (MSP WB Mot. to Strike, R.470). That same day, the Government filed a notice of consent to partial dismissal, consenting "to the dismissal of Relator Angelo's claims asserted against the State Farm Defendants in this case, without prejudice as to the United States." (Gov't Notice of Consent, R.468).[10]

On May 26 and June 8, 2023, the State Farm Group Defendants filed two motions for an order of dismissal, requesting their dismissal from the case entirely. (Mots. for Order of Dismissal, R.473, R.475).

On June 23, 2023, the Government filed a statement of interest. (Gov't Statement of Interest, R.480). The Government stated, in the State Farm Group Defendants' motions, the State Farm Group Defendants "appear[ed] to have interpreted the United States' Notice of Consent to Partial Dismissal as its consent to the dismissal of all claims alleged against the State Farm Defendants in this case," but "[a]s referenced in the United States' Notice, the United States consents *only to*

---

[10] On June 1, 2023, the State of Michigan similarly consented to such partial dismissal. (R.474).

*the dismissal of Relator Angelo insofar as he asserts claims against the State Farm Defendants* in this case." (*Id.*, Page ID #8262 (emphasis added)). The Government further clarified that it "previously has not taken and currently takes no position on the merits of any arguments regarding the other relator in this case, MSP WB, LLC." (*Id.*).

On March 26, 2024, the district court granted the omnibus motion to dismiss and motion for judicial notice and dismissed the case with prejudice. (Order of Dismissal, R.490). First, the district court found that, for the 311 Insurer Defendants for which Appellants did not allege an exemplar, Appellants' allegations were a group pleading and that Appellants failed to identify any claims or any "characteristic example" of an FCA violation. (*See id.*, Page ID #8419-8425). The district court also found that, for the five Insurer Defendants for which Appellants did allege exemplars, (1) mere errors or omissions in Section 111 reporting failed to constitute violations of the FCA; (2) none of the exemplars stemmed from an occasion where an Insurer Defendant had an obligation to reimburse; (3) Appellants failed to plead that any Appellee knowingly or recklessly made a false statement or avoided a reimbursement obligation to the Government; and (4) Appellants failed to sufficiently allege scienter with respect to any of the Appellees. (*See id.*, Page ID #8426-8432).

Next, the district court found that, based on the exhibits contained in Appellees' motion for judicial notice, the public disclosure bar barred Appellants' claims against all Appellees. (*See id.*, Page ID #8432-8437). The district court also found that Appellants failed to sufficiently allege with particularity the existence of any agreement between and among the Insurer Defendants and ISO. (*See id.*, Page ID #8437-8441). Moreover, the district court found that, while it could decline to exercise supplemental jurisdiction over Appellants' state law claims, it would consider them on the merits and found that Appellants' allegations were conclusory and failed to link Insurer Defendants' knowing failure to comply with Section 111 requirements with any false claim submitted to any Medicaid agency. (*See id.*, Page ID #8442-8444). Further, the district court denied MSP WB's motion for leave to amend. (*See id.*, Page ID #8444-8454). On April 23, Appellants filed a timely notice of appeal from the district court's March 26 Order. (Not. of Appeal, R.492)

## SUMMARY OF THE ARGUMENT

The district court committed reversible error and abused its discretion in dismissing Appellants' complaint with prejudice. First, the district court erred in finding that Appellants did not adequately allege violations of the FCA and state law analogs, as (1) Appellants sufficiently alleged (and could sufficiently allege) such violations under Rule 9(b); and (2) Appellant's adequately alleged an obligation to reimburse the Government and the States on behalf of the Insurer Defendants.

Second, the district court erred in finding that the public disclosure bar barred Appellants' claims, as (1) the purported public disclosures were not substantially similar to Appellants' allegations; and (2) the district court entirely failed to consider the original source exception to the public disclosure bar, which Appellants satisfy. Third, the district court erred in finding that Appellants did not adequately allege a conspiracy between the Insurer Defendants and ISO, as Appellants sufficiently alleged (and can sufficiently allege) that ISO, as the Section 111 clearinghouse for every Insurer Defendant, entered agreements and coordinated with the Insurer Defendants to obfuscate their reimbursement obligations to Government health plans and their contractors.

## **ARGUMENT**

## I.    STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim, including dismissal for failure to plead with particularity under Fed. R. Civ. P. 9(b). *See U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007) ("*Bledsoe II*") (quotation omitted). Additionally, this Court reviews *de novo* a district court's dismissal under the public-disclosure bar. *See U.S. ex rel. Rahimi v. Rite Aid Corp.,* 3 F.4th 813, 823 (6th Cir. 2021). "[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment." *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) (quotation omitted).

A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Fowler*, 819 F.3d 298, 303 (6th Cir. 2016) (cleaned up). Meaning, "conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error." *Info-Hold, Inc. v. Sound Merch., Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (cleaned up).

## II.  THE DISTRICT COURT ERRED IN GRANTING APPELLEES' OMNIBUS MOTION TO DISMISS

### A. The District Court Erred in Finding that Appellants Did Not Adequately Allege Reverse FCA Violations

The district court found that Appellants failed to adequately allege reverse false claims violations because (1) for the non-exemplar Insurer Defendants, Appellants' allegations failed to meet Rule 9(b) as a group pleading and failed to identify any claims or any "characteristic example" of an FCA violation; and (2) for the exemplar Insurer Defendants, Appellants failed to plead that any Appellee knowingly or recklessly made a false statement or avoided a reimbursement obligation to the Government. (*See* Order of Dismissal, R.490, Page ID #8419-8432). Additionally, the district court found that Appellants failed to adequately allege their state law claims for similar reasons. (*See id.*, Page ID #8442-8443). However, the district court erred in making these findings for the following reasons.

## B. Appellants Satisfied (and Can Satisfy) Rule 9(b) for Their Federal & State Claims

First, it is undisputed that Appellants' allegations were required to meet Rule 9(b). *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562-63 (6th Cir. 2003). However, the district court erred (1) in its recitation and interpretation of Appellants' allegations and (2) in its understanding of the relevant standard and application of Rule 9(b) to Appellant's allegations.

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Rule 9(b) is not to be read in isolation, but is to be interpreted in conjunction with [Rule] 8." *Bledsoe II*, F.3d at 503 (citation omitted) Rule 8 requires only "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id*. (quotation omitted). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *Id*. (citations omitted).

Court's in this Circuit recognize that, under certain circumstances, the Rule 9(b) requirement may be relaxed, namely where "there has been no discovery in [the] action, and the alleged fraud occurred over an extended period of time, is within

the knowledge and control of [the defendants], and consisted of numerous acts." *Whalen v. Stryker Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (citing *Bledsoe II*, 501 F.3d at 509-10); *see also Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) ("It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery. Rule 9(b) does not require omniscience; rather the Rule requires…enough specificity to put defendants on notice as to *the nature of the claim*." (emphasis added)). This Court has also recognized that, in the FCA context, Rule 9(b) may be satisfied through the use of "representative samples of the *broader class of claims*." *Bledsoe II*, 501 F.3d at 510 (citations omitted) (emphasis added).

Further, courts have consistently recognized that statistical analysis is sufficient to put the defendant on notice of an FCA claim. *See, e.g., U.S. ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016); *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 845 n.5 (9th Cir. 2021); *U.S. ex rel. Integra Med. Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020); *see also U.S. v. Robinson*, 705 F. App'x 458 (6th Cir. 2017) (affirming Government's use of "statistical sampling and extrapolation to establish liability and to prove damages" in FCA case); *United States v. Life Care Ctrs. of Am., Inc.*, 114 F. Supp. 3d 549, 570-71 (E.D. Tenn. 2014) (permitting submission of statistical analysis to factfinder in FCA case).

Additionally, other circuits have held that, in instances of a hub-and-spoke FCA conspiracy, "any parallel actions of the 'spokes' can be addressed by collective allegations" and satisfy Rule 9(b). *U.S. ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 678 (9th Cir. 2018).

Initially, the district court's division of the Insurer Defendants between non-exemplar Insurer Defendants and exemplar Insurer Defendants misstates the allegations and is demonstrative of the district court construing Appellants' allegations *against* them. For one, Appellants raised *nine* separate exemplars in the Amended Complaint, not five, as the district court suggested. (*See* Am. Compl., R.20, Page ID #486-503), .[11] Moreover, while each exemplar naturally involved a claim related to an individual Insurer Defendant, these nine exemplars corresponded with *nine separate groups* of the Insurer Defendants (corresponding with 227 of the Insurer Defendants), as such exemplars were demonstrative of *each group's* systematic failure to report under Section 111 and to reimburse Government

---

[11] In the proposed SAC, MSP WB provided revised and updated exemplar allegations. In particular, MSP WB revised the exemplars for the Berkshire Hathaway Group Defendants, (*see* Proposed SAC, R.426-1, Page ID #6615-6616); the Progressive Group Defendants, (*see id.*, Page ID #6617-6618); the State Farm Group Defendants, (*see id.*, Page ID #6619-6620); the Kemper Corporation Group Defendants, (*see id.*, Page ID #6623-6625); and the Travelers Group Defendants, (*see id.*, Page ID #6630-6631). MSP WB added exemplars for the National General Group Defendants, (*see id.*, Page ID #6632-6633); the Auto Owners Group Defendants, (*see id.*, Page ID #6634-6635); the Farmer Group Defendants, (*see id.*, Page ID #6636-6637); and the USAA Insurance Group Defendants, (*see id.*, Page ID #6638-6639).

program contractors, i.e., Medicare Advantage plans. (*See id.*, Page ID #477-485, 486-503). The practice of grouping Insurer Defendants based on their corporate affiliations and common practices was never contested below, and the Insurer Defendants defended the suit in such corresponding groups (and continue to do so in the instant appeal). Instead of attributing the nine exemplars to the nine corresponding groups (which, again, involved 227 Insurer Defendants), the district court found that Appellants had only alleged five exemplars for only five Insurer Defendants. In so doing, the district court incorrectly recited Appellants' allegations and improperly construed them against Appellants. This is reversible error.

At any rate, for the groups of Insurer Defendants where an exemplar was not alleged (i.e., 89 of the Insurer Defendants), the district court erred in its articulation and application of the relevant standard under Rule 9(b). First, this case warranted a relaxed Rule 9(b) standard, as (1) discovery had not yet begun; (2) the fraud was alleged to have occurred over an extended period of time;[12] the information related to such fraud was largely in Defendants' control;[13] and (3) the alleged fraud

---

[12] The MSP Act was enacted in 1980. And, as discussed below, Section 111 reporting requirement were implemented in 2011 for first-party claims and 2012 for third-party claims.

[13] For example, MSP WB was and continues to be excluded from using ISO's Section 111 reporting database. (*See* Am. Compl., R.20, Page ID #451-452). Additionally, the Insurer Defendants' claims processing procedures and information regarding their relationship with ISO are entirely within Appellees' control. As the deposition testimony of several of the Insurer Defendant and other insurance

consisted of numerous acts.[14] *Whalen*, 783 F. Supp. 2d at 982. Yet, the district court erroneously rejected the application of a relaxed Rule 9(b) pleading standard, without consideration of any of these factors. (*See* Order of Dismissal, R.490, Page ID #8417-8418).

Moreover, the district court's finding that Appellants' allegations were an impermissible group pleading was also erroneous, as this finding was premised on a profound misunderstanding of *Bledsoe II*'s holding. Namely, the district court concluded *Bledsoe II* and its progeny dictated that Appellants must allege at least one exemplar for each and every Insurer Defendant to satisfy Rule 9(b). (*See* Order of Dismissal, R.490, Page ID #8423). However, *Bledsoe II* says no such thing. Instead, *Bledsoe II* requires that the "representative samples" be illustrative of "the *broader class*" of Appellees' false claims. *Bledsoe II*, 501 F.3d at 510 (emphasis added). Appellants' exemplars and statistical sampling easily meet that standard and illustrate the broader class of false claims for every Insurer Defendant.

---

company personnel demonstrates, the systematic effort to avoid the collection of reportable information and to conceal the reimbursement obligation was an inherent feature of their claims processing procedures. (*See id*., Page ID #476, 504-538).

[14] For example, the alleged obfuscation of the Insurer Defendants' obligation to reimburse the Government and its contractors under the MSP Act was alleged to have involved the enactment of policies and procedures to avoid the collection of reportable information and, through agreements with and the assistance of ISO, to fail to fully report under Section 111. (*See* Am. Compl., R.20, Page ID #476, 504-538).

Similarly, the district court's dismissal of Appellants' state law claims was erroneous because Appellants' exemplars were representative of the broader class of Medicaid claims, with similar reporting and reimbursing requirements. (*See* Am. Compl., R.20, Page ID #438-443, 454-455; *see also id.*, Page ID #507, 510, 512-513, 528, 538 (depositions of Insurer Defendant and other insurance company personnel showing similar policies regarding collection and reporting of information for Medicare and Medicaid claims)). Plus, it is indisputable that all Appellees were on notice of "*the nature of the claim*[s]" to which the exemplars corresponded, i.e., false claims arising from their conspiratorial scheme to avoid reporting and reimbursing Government programs. *Williams*, 681 F.3d at 803.

Further the district court's finding that Appellants failed to sufficiently allege a hub-and-spoke conspiracy (wherein a group pleading would satisfy Rule 9(b)) was equally erroneous. The district court found that there were no allegations of a policy or agreement to which all Insurer Defendants adhered such that all Insurer Defendants had the same role in the conspiracy. (*See* Order of Dismissal, R.490, Page ID #8424-8425) However, the district court entirely ignored Appellants' allegations that ISO, as the Section 111 reporting clearinghouse for *every* Insurer Defendant, was the hub that facilitated each Insurer Defendant's obfuscation of their reimbursement obligations and that each Insurer Defendant was a spoke that enacted policies and procedures, in coordination with ISO, to avoid collecting and reporting

(through ISO) the requisite information. (*See* Am. Compl. R.20, Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523).[15] Under such an alleged conspiracy, it is sufficient, under Rule 9(b), to allege the "parallel actions of the 'spokes'" through "collective allegations." *Silingo*, 904 F.3d at 678.

What's more, the district court failed to even mention or discuss Appellants' submission of statistical analyses demonstrating the reporting failures of *each and every group* of Insurer Defendants, despite courts' uniform holdings that such allegations satisfy Rule 9(b). (*See* Am. Compl., R.20, Page ID #455-456); *Customs Fraud Investigations, LLC*, 839 F.3d at 258; *Integra Med Analytics LLC*, 854 F. App'x 840 at n.5; *Baylor Scott & White Health*, 816 F. App'x at 898. This omission was also erroneous.

Thus, Appellants' allegations satisfy (and can satisfy) Rule 9(b). Accordingly, the district court erred in dismissing with prejudice Appellants' claims against certain Insurer Defendants under Rule 9(b), and this Court should reverse and remand.

---

[15] As discussed below, Appellants' proposed SAC further demonstrates that any purported pleading deficiencies regarding the particularity of the Insurer Defendants' conspiracy with ISO are curable through amendment. (*See* Proposed SAC, R.426-1, Page ID #6574-6580, 6586-6587)

C. Appellants Sufficiently Alleged (and Can Allege) the Insurer Defendants' Obligations to Reimburse Government Health Plans and Their Contractors

As for the Insurer Defendants for which there were exemplars, the district court found that that mere errors or omissions in Section 111 reporting were not violations of the FCA. (*See* Order of Dismissal, R.490, Page ID #8428-8429). The district court also found that none of the exemplars stemmed from an occasion where an Insurer Defendant had an obligation to reimburse the private MAO for the specific medical expenses described. (*See id.*, Page ID #8429-8430). And the district court found that Appellants failed to plead that any Insurer Defendant knowingly or recklessly made a false statement to the Government or avoided a reimbursement obligation to the Government. (*See id.*, Page ID #8431-8432). Each of these findings was in error.

First, the district court's finding that errors or omissions in Section 111 reporting cannot constitute violations of the FCA is premised on two out-of-circuit district court cases that are inapposite and do not address Section 111 <u>*at all*</u>. In *U.S. ex rel. Mason, v. State Farm Mut. Auto. Ins.*, 2008 WL 2857372 (D. Idaho July 23, 2008), the relators, a Medicare beneficiary and his attorney, alleged that the defendant auto insurer failed to reimburse a single conditional payment made by Medicare to a hospital for the relator's medical procedures. *See id.*, at *1-2.[16] Not

---

[16] The district court found *Mason* to be the prevailing authority on MSP Act claims and the FCA. However, any discussion of *Mason* was absent in the district court's

only do these allegations have nothing to do with deficient Section 111 reporting, to systematically conceal reimbursement obligations, as alleged here, but they also do not involve unreimbursed claims owed to Government contractors, i.e., Medicare Advantage plans. Moreover, the burden is now on primary payers like State Farm to alert government payers of their existence, thus flipping the Mason scenario on its head. Thus, *Mason* never addressed the allegations presented here.

Moreover, the part of the *Mason* opinion on which the district court relied, addressed <u>*conventional*</u> false claims and applied *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662 (2008),[17] which held that, under a prior version of 31 U.SC. 3729(a)(2), a plaintiff must prove that a defendant intended to use a false record to get the government to pay a claim. *See id.* at 665. However, this ruling caused Congress to amend the FCA so that "a claimant no longer has to prove that a defendant intended to get a false claim paid." *United States v. United Techs. Corp.*,

---

analysis regarding public disclosure, and for good reason, as the allegations in *Mason* are not substantially similar given Section 111 was not implemented, just as in *Hayes* and *Takemoto* discussed below.

[17] Compounding matters, *Mason* also added an additional requirement nowhere found in *Allison Engine*: that the false statement be directly presented to the relators. *See Mason*, 2008 WL 2857372, *5. Yet the Supreme Court in *Allison Engine* held that "[i]t is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim." 553 U.S. at 673. Nowhere in this holding is a requirement that the false statement be presented directly to any particular person; instead, the question is the material effect of the false statement on the Government's decision to pay.

626 F.3d 313, 321 (6th Cir. 2010), *as amended* (Jan. 24, 2011). Thus, the portion of *Mason* that the district court applied is blatantly inapposite to Appellants' <u>*reverse*</u> false claim allegations and relies on an interpretation of defunct version of the FCA. What's more, the *Mason* Court permitted the relators to amend their complaint, something not afforded to Appellants here. *See Mason*, 2008 WL 2857372, at *14.[18]

The correct standard for a direct reverse false claim, as articulated by this Court, requires that a relator adequately plead "'that the defendant made a false record or statement at a time that the defendant owed to the government an obligation'—a duty to pay money or property." *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 473 (6th Cir. 2011) (quoting *Am. Textile Mfrs. Inst., Inc. v. The Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999)). However, courts have recognized that a reverse false claim can occur indirectly, as the statute "does not require that the statement impair the *defendant's* obligation; instead, it requires that the statement impair '*an* obligation to pay or transmit money or property to the Government.'" *United States v. Caremark, Inc.*, 634 F.3d 808, 817 (5th Cir. 2011) (cleaned up).

Here, Appellants allegations demonstrate both direct and indirect reverse false claims. By failing to report and/or withholding requisite information under Section

---

[18] As for *U.S. ex rel. Hendrickson v. Bank of Am.*, N.A., 343 F. Supp. 3d 610 (N.D. Tex. 2018), which the district court cites without any explanation, the relator brought allegations regarding banks ignoring death notification entries in processing payments federal benefits. *See id.* at 618. Thus, *Hendrickson* (the import of which the district court never explained) is wildly inapposite.

111, the Insurer Defendants (through ISO) concealed and avoided their duty to reimburse Government health plans and their contractors. (*See* Am. Compl., R.20, Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523). Additionally, when the Insurer Defendants failed to pay their obligation this conduct impaired the MAOs obligations to the Government, as the MAOs were forced to shift the cost of the claims through (1) mid-year risk-adjustment reports; (2) year-end reconciliations; (3) Medical Loss Ratio ("MLR") remittance payments; and (4) subsequent bid calculations. (*See, e.g.,* Proposed SAC, R.426-1 Page ID #6534-6538, 6567-6568, 6585, 6589).

Moreover, the district court's conclusion that Congress did not intend to impose liability under the FCA for avoiding an obligation for federal contractor such as a health insurer MAO is erroneous and highly problematic. (*See* Order of Dismissal, R.490, Page ID #8429).

In *U.S. ex rel. Bassan v. Omnicare, Inc.*, the Government intervened in a Medicare Part D reverse false claim case that is currently being litigated in the Southern District of New York. *See id.*, 2021 WL 1063784 (S.D.N.Y. Mar. 19, 2021) At issue is the submission of claims by long-term care pharmacy to Medicare Part D plan sponsors (private entities like the MAOs at issue here) who submitted the claims to CMS to obtain reimbursement. *See id.* at *1. While analyzing the reverse FCA claim, the *Bassan* court observed that "42 U.S.C. § 1320a-7k(d)(4)(B)—passed

as part of the Affordable Care Act—…requires entities to return any overpayments received from Medicare or Medicaid within 60 days after the overpayment is identified." *Id*. at *11. Further, an "overpayment" is defined as "any funds that a person receives or retains under subchapter XVIII [Medicare] or XIX [Medicaid] to which the person, after applicable reconciliation, is not entitled under such subchapter." *Id*. An "overpayment that an entity keeps for more than 60 days "is an ***obligation***…for purposes of section 3729" of the FCA. *Id*. at § 1320a-7k(d)(3)." *Id*. (emphasis added). Therefore "Congress stated that funds received or retained under [Medicare and] Medicaid would constitute overpayments for the purposes of 31 U.S.C. § 3729(a)(1)(G)." *Id* (citing *Kane ex rel. U.S. v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 396 (S.D.N.Y. 2015); *U.S. ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010, 1056 (N.D. Cal. 2020)). Similarly, the Northern District of Georgia, denied a defendant's summary judgment motion on allegations of reverse FCA claims premised on violations of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, where the defendant colluded with pharmacy benefit managers to submit false claims to Medicare Part D plans. *See U.S. ex rel. Heller v Guardian Pharm. of Atlanta, LLC*, 2023 U.S. Dist. LEXIS 207629, at *3 (N.D. Ga. Sept. 30, 2023).

The Government and courts have recognized the failure to reimburse an MAO as an obligation that can underly a reverse false claim.[19] The Government has in statements of interest successfully argued that improper submissions of payments to MAOs fall within the FCA. *See U.S. ex rel. SW Challenger, LLC v. EviCore Healthcare MSI, LLC*, 2021 WL 3620427, at *7 (S.D.N.Y. Aug. 13, 2021) (noting Government statement of interest stating that "claims made to [Medicare] contractors are encompassed within the meaning of claim under the FCA, and that it is not fatal that the submission of the allegedly false claims were not made directly to the Government" and that "the approval of medically unnecessary treatment could give rise to false claims by causing the provider to bill for unnecessary treatment, billing for review services that were not provided, or indirectly affecting CMS's calculation of capitation rates." (clean up)); *U.S. ex rel. Martinez v. Orange Cnty. Global Med. Ctr., Inc.*, 2017 WL 9482462, at *3 (C.D. Cal. Sept. 14, 2017) (noting Government statement of interest stating "the volume or value of services provided to Part C beneficiaries and the costs incurred by a particular MAO could certainly affect whether a MAO chooses to submit a bid (42 C.F.R. § 422.254), the MAO's bid amount, and the Government's share of the savings for a below-benchmark bid (42 C.F.R. § 422.304(a)(1))." (cleaned up)); *U.S. ex rel. Zafirov v. Fla. Med. Assocs. LLC*, 2022 WL 4134611, at *6 (M.D. Fla. Sept. 12, 2022) ("[T]he government notes

in its statement of interest, the diagnosis codes stand at the 'heart of the machinery of the Medicare Advantage Program.'").

The district court's error is magnified given, Medicare Part D is administered solely by private entities, meaning that any false claim under Part D would be rendered completely immune by the district court's finding. There is no functional distinction in benefits provided by Medicare and Medicare Advantage; the crucial factor is whether the money originates from the government. The district court's holding ignores the provisions of the Medicare Act that state MAO's are paid out of the Medicare Trust Fund, *see* 42 U.S.C. § 1395w-23(f) ("The payment to a Medicare [Advantage] organization…shall be made from the Federal Hospital Insurance Trust Fund and the Federal Supplementary Medical Insurance Trust Fund."), as well as well-established case law holding that "[e]ven a drop of treasury money" establishes liability under the FCA. *U.S. ex rel. Heath v. Wis. Bell, Inc.*, 92 F.4th 654, 667 (7th Cir. 2023) (citing *U.S. ex rel. Shupe v. Cisco Sys.*, 759 F.3d 379 , 383 (5th Cir. 2014)); *see also U.S. ex rel. DRC, Inc. v. Custer Battles, LLC,* 562 F.3d 295, 303-04 (4th Cir. 2009); *U.S. ex rel. Shank v. Lewis Enters*., 2006 WL 1207005, at *7 (S.D. Ill. May 3, 2006). This is akin to creating a direct and indirect purchaser rule for submitting fraudulent claims to the Government. Such a distinction has no merit when payment comes from government coffers.

Second, the district court's finding that Appellants' exemplars did not establish the Insurer Defendants' duty to the pay the Government or its contractors is also erroneous. (*See* Order of Dismissal, R.490, Page ID #8429-8430). For one, the district court failed to mention or discuss the circumstances or factual allegations of even a single exemplar. Contrary to this summary hand waving, Appellants' exemplars do establish that the Insurer Defendants had an affirmative obligation to reimburse the Government's contractors and failed to adequately report such claims under Section 111. (*See* Am. Compl., R.20, Page ID #486-503).

Third, as to scienter, the district court summarily discounts, without citation to authority, the deposition testimony provided as "from another case". (*See* Order of Dismissal, R.490, Page ID #8431). This conclusion, made without any citation to legal authority, is ironic, given the 47 exhibits that the district court judicially noticed (as discussed below) all came from other cases. Regardless, some of the deposition testimony came from personnel of named Insurer Defendants. (*See* Am. Compl, R.20, Page ID #504-514). In other words, they are opposing party admissions that support Appellants' allegations of scienter. *See* Fed. R. Evid. 801(d)(2).

Moreover, to the extent this Court rejects the Appellants' reverse false claim allegations, Appellants included in their proposed SAC a claim for conventional false claims, under 31 U.S.C. § 3729(a)(1)(A) and (B), wherein Insurer Defendants and ISO knowingly (1) caused the submission of false claims for payment to the

43

Government and (2) made, used, or caused to be made or used, false records and statements material to false or fraudulent claims to the Government. (*See* Proposed SAC, R.426-1, Page ID #6588-6593). The Insurer Defendants and ISO did so by causing the submission of bills to the Government, directly or through Government contractors, by medical providers, beneficiaries, downstream entities, etc., for the payment of Government health plan beneficiaries' medical services, which the Government healthcare plan was not responsible for paying. (*See* Proposed SAC, R.426-1, Page ID #6589-6591). The Insurer Defendants and ISO caused the submission of these false claims—as well as made, used, or caused to be made or used, false records and statements material to these false claims—by knowingly and improperly avoiding, concealing, and denying their primary payer status, in certifications to medical providers and beneficiaries and in deficient Section 111 reporting. (*See id*.).

Appellants' exemplars are instructive in this regard, as the medical providers for each exemplar submitted bills to the Government or a Government contractor for payment of the exemplar's medical services after an Insurer Defendant denied payment, even though the exemplar was insured by the Primary Plan. (*See* Proposed SAC, R.426-1, Page ID #6571-6573, 6613-6639). Moreover, had the Insurer Defendants and ISO properly reported each exemplar's Government health plan beneficiary status under Section 111, the Government would have been able to

coordinate benefits with the Insurer Defendant by contesting the Insurer Defendants' coverage denials, denying the claim as a secondary payer, or timely seeking reimbursement from the Insurer Defendants for the conditional payments. (*See id.*, Page ID #6561, 6585-6586). Thus, even if this Court rejects Appellants' reverse false claim theory, "dismissal with prejudice and without leave to amend" was "not appropriate" where "the complaint could [] be saved by amendment" to include direct false claims allegations. *Newberry*, 789 F.3d at 646.

Last, to the extent Appellees will rely on this Court's recent opinion, *U.S. ex rel. Angelo v. Allstate Ins. Co.*, 106 F.4th 441 (6th Cir. 2024), that decision is distinguishable for several reasons. Through litigation with Appellant's affiliate dating back to 2014, Appellants discovered and alleged here that the Insurer Defendants intentionally do not learn of the beneficiaries' Medicare status, Appellants alleged the actual contract numbers related to the policy of insurance that forms the basis of the false claims alleged herein, and that the Insurer Defendants knew that MAOs were not being told of Primary Insurers existence to properly coordinate benefits or to seek proper reimbursement. Simply relying on the *Allstate* Court's observation that, with respect to relators' conspiracy claim, "a contractual relationship alone does not suggest collusion any more than it suggests a legitimate business relationship" ignores that Appellants' alleged that the Insurer Defendants held a vast majority of stock in one class of ISO, as well as former executives holding

board of director membership of ISO.. *See, e.g., U.S. ex rel. Howard v. Lockheed Martin Corp.*, 499 F. Supp. 2d 972, 980 (S.D. Ohio 2007) (recognizing conspiracy between weapons manufacturer and subcontractors); *U.S. ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 133 (D.D.C. 2014) (similar); *United States v. Toyobo Co.*, 811 F. Supp. 2d 37, 51 (D.D.C. 2011) (similar). Here, Appellees have never disputed their contracts with ISO, which are solely within the control of Appellees. And Appellants' Amended Complaint and proposed SAC provide additional factual allegations supporting the Insurer Defendants' conspiratorial agreement with ISO, including the Insurer Defendants' ownership interests in ISO and being members of the Board of Directors. (*See* Am. Compl., R.20, Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523; Proposed SAC, R.426-1, Page ID #6574-6580, 6586-6587).[20]

Regardless, *Allstate* is an intervening change in controlling law that the district court did not have the benefit of considering and that warrants giving Appellants an opportunity to replead. *See U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 507 (6th Cir. 2008) (permitting filing of amended complaint after the intervening issuance of *Bledsoe II*, even when motion for leave to amend filed

---

[20] Additionally, the *Allstate* Court, in addressing *Newberry*, merely demurred that the procedural postures differed and entirely ignored the binding rule espoused by this Court: "[D]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Newberry*, 789 F.3d at 646.

after final judgment). As the *SNAPP* Court explained, in such a circumstance, leave to amend is warranted under Rule 59(e) and/or 60. *See id.*

As a result of the foregoing, the district court erred in dismissing with prejudice FCA claims on this basis. Accordingly, this Court should reverse and remand. Alternatively, Appellants should be afforded an opportunity to amend in light of the intervening *Allstate* opinion.

## III. The District Court Erred in Finding that the Public Disclosure Bar Barred Appellants' Claims

The district court found that the public disclosure bar barred Appellants' claims as to all Appellees. (Order of Dismissal, R.490). However, this finding was erroneous for two reasons: (1) the purported public disclosures were not substantially similar to Appellants' allegations; and (2) the district court entirely failed to consider the original source exception to the public disclosure bar, which Appellants satisfy.

### A. Appellants' Allegations Were Not Previously Disclosed and Are Not Substantially Similar to the Purported Prior Public Disclosures

The district court agreed with Appellees' contention that "most, if not all, of Relators' allegations are substantially the same as allegations previously made by one or both Relators, their affiliated entities, or other persons, as reflected in Appellees' motion for judicial notice. (*See* Order of Dismissal, R.490, Page ID #8434) The district court erred in this finding for several reasons. First, the purported public disclosures were disclosures of Appellants' own litigation, and those

disclosures specifically do not qualify as a public disclosure under the FCA at all. Second, the district court failed to undertake the required "substantially the same" analysis. Third, the district court failed to undertake the required original source analysis, which would have allowed Appellants' claims to proceed even if the public disclosure bar applied. Failure to undertake the original source analysis alone is reason for reversal. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (Appellate courts should not consider and decide an issue for the first time.).

"[T]he Supreme Court has affirmed an aggressive reading of the FCA" and resist creating extra barriers for FCA enforcement. *U.S. ex rel. Fry v. Health All. of Greater Cincinnati*, 2009 WL 1324164, at *3 (S.D. Ohio May 12, 2009) (citing *Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003)). For a public disclosure, the disclosure must have (1) been public, and (2) revealed the same kind of fraudulent activity against the government as alleged by the relator." *United States v. Chattanooga-Hamilton County Hosp. Auth*.,782 F.3d 260, 265-66 (6th Cir. 2015) (citing *U.S. ex rel. Poteet v. Medtronic, Inc*., 552 F.3d 503, 511 (6th Cir. 2009)). Last, "if the aforementioned conditions have been met, the Court *must determine whether the relator is an "original source" so that the action may proceed despite the public disclosure*." *U.S. ex rel. Maur v. Hage-Korban*, 2020 WL 912753 (W.D. Tenn. Feb. 25, 2020), *aff'd*, 981 F.3d 516 (6th Cir. 2020) (citing *U.S. ex rel. Armes v. Garman*, 719 F. App'x 459 (6th Cir. 2017)) (emphasis added).

Courts have created a multi-factor test in determining whether a claim is "substantially the same" as a prior public disclosure, including (1) whether relators present genuinely new and material information beyond what has been publicly disclosed; (2) whether relators allege "a different kind of deceit"; (3) whether relators' allegations require "independent investigation and analysis to reveal any fraudulent behavior"; (4) whether relators' allegations involve an entirely different time period than the publicly disclosed allegations; and (5) whether relators' "supplied vital facts not in the public domain." *See Bellevue v. Universal Health Servs. of Hartgrove, Inc.*, 867 F.3d 712, 719 (7th Cir. 2017) (citing *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 281 (7th Cir. 2016)).

As an initial matter, the enactment of Patient Protection and Affordable Care Act ("PPACA"), amended the language of public disclosure statute, 31 U.S.C. § 3730, from "based upon" to "substantially the same". These revisions "overhauled" and "radically changed" the FCA to "lower the bar for relators." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 298-99 (3d Cir. 2016). Now, "information disclosed in a criminal, civil, or administrative hearing now qualifies as a public disclosure only if the information was disclosed in a federal case to which the government was a party." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries*, LLC, 812 F.3d 294, 299 (3rd Cir. 2016). "As a result, information that was disclosed in a federal case between private parties no longer

constitutes publicly disclosed information." *Id*. While the case law concerning public disclosures after the "substantially the same" amendment in this Court is limited, this Court has held that (1) an action is barred if a prior disclosure puts the government on notice of the fraud alleged in the *qui tam* complaint, and (2) a broader prior disclosure bars a *qui tam* action based on a narrower set of allegations stemming from the same fraud. *See U.S. ex rel. Holloway v. Heartland Hospice*, 960 F.3d 836, 850-51 (6th Cir. 2020).

Here, the district court found that the 47 documents attached to Appellees' motion for judicial notice qualified as "public disclosures." (*See* Order of Dismissal, R.490, Page ID #8438). But the district court boosted the generality of the public disclosures to foreclose the possibility that a "more sophisticated, second-generation method of violating" the law was viable for Insurer Defendants. *Leveski v. ITT Educ. Servs., Inc*., 719 F.3d 818, 832 (7th Cir. 2013). However, 29 of the "public disclosures" involved news coverage of an affiliated MSP company's private MSP Act lawsuits. (*See* Omnibus Mot. for Judicial Notice, R.339). This was erroneous under the amended statute, as news articles disclosing private litigation have been excluded from the sources considered a "public disclosure". *See Majestic Blue Fisheries*, LLC, 812 F.3d at 299. To rule otherwise would nullify Congress's intent to exclude non-governmental private litigation from the public disclosure bar. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 314 (2020) ("The Court

likewise hesitates to adopt an interpretation of a congressional enactment which render superfluous another portion of that same law.")(cleaned up).

Next, four of the "public disclosures" are merely articles that discuss the passage and implementation of the mandatory reporting requirements under Section 111 and a proposed legislation called the Stabilizing Medicare Access to Rehabilitation and Therapy ("SMART") Act, with no mention of false claims being submitted to the Government. (*See* Omnibus Mot. for Judicial Notice, R.339). Such "public disclosures" would in no way put the Government on notice of any fraud. *See Holloway*, 960 F.3d at 850-51. Moreover, to rule that news coverage regarding the passage of legislation constitutes a public disclosure that bars an FCA suit based on a knowing failure to comply with the law would also render the entirety of the *qui tam* statute meaningless. Accordingly, the district court's finding that these four articles qualified was also erroneous.

According to the district court, additional "public disclosures" included (1) an article discussing two *qui tam* actions that were filed (a) regarding a hospital that improperly received payment from Medicaid as a result of billing errors, and (b) regarding a Medicare beneficiary who was enrolled in a car insurance plan that required Medicare to provide payment for accident related expenses primarily, circumventing the MSP Act in its entirety; (2) four articles discussing the Government filing MSP Act lawsuits against plaintiff attorneys for failure to

payback Medicare after a personal injury settlement; (3) two documents related to private litigation for one of the alleged exemplars; (4) one document regarding State Farm settlement with Mr. Angelo; (5) one document regarding the incorporation of MSP WB; and (7) one article on the enactment of Section 111 fines for non-reporting. (*See* Omnibus Mot. for Judicial Notice, R.339). As with the above purported "public disclosures", these all miss the mark, as they either do not involve Appellants' allegations regarding FCA violations and/or Section 111 reporting at all, involve private litigation, or involve information wholly irrelevant to Appellants' litigation. Moreover, the mere fact that the Government has filed MSP Act enforcement actions (not FCA actions) against plaintiff attorneys for not reimbursing Medicare does not make such news articles or cases "substantially the same" as Relators' allegations, especially given the recovery was not based on a failure to report under Section 111. Logically, the Government would have implemented these lawsuits only after being *notified that a settlement had occurred, meaning the settlement was reported*. This the opposite of what Appellants alleged.

The last set of documents found to be a public disclosure concerned two *qui tam* actions filed in 2010, before the implementation of Section 111, which alleged that (1) auto insurers were using creative settlement agreements to not reimburse Medicare; and (2) auto insurers did not hire a consultant *prior to Section 111 implementation* to comply with the "*soon to be enacted*" requirements. (*See*

Omnibus Mot. for Judicial Notice, R.339). While the *Takemoto* and *Hayes* complaints may appear to be closer to a "public disclosure" than the foregoing documents, they are not substantially the same as the scheme Appellants allege here. Neither *Takemoto* nor *Hayes* alleged a fraud injury on the United States due to Appellees' failure to satisfy Section 111's reporting requirements. Rather, *Hayes* and *Takemoto* alleged violations of the MSP Act that <u>predated</u> Section 111 implementation altogether.

Here, the implementation of Section 111 is the critical point in the "substantially the same" analysis. Before implementation of Section 111, the Government *knew that Medicare was not being reimbursed* for accident-related medical expenses; *this prompted the passage of the Section 111* mandatory reporting in the first place. *See United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 891 n.16 (11th Cir. 2003) ("To the extent there is any record of legislative intent at all, it indicates that Congress was dissatisfied that Medicare was not recouping as much from primary payers as it could there is not the slightest indication of congressional sentiment that Medicare was recovering too much.") (citations omitted). Essentially, Section 111 was a remedial measure aimed at decreasing Medicare expenses. In both the *Hayes* and *Takemoto* cases, defendants could have raised in defense that the enactment of Section 111 was a "public disclosure" of the fraud alleged by *Takemoto* and *Hayes* because the government knew they were not being paid back under the

MSPA and put legislation in place to combat the issue (e.g., mandatory reporting requirements).

*Takemoto* references Section 111 requirements as future events, e.g., "the looming MMSEA Section 111 reporting requirements" and "the impending MMSEA 111 legislation". *Takemoto v. ACE Am. Ins. Co.*, No. 1:11-cv-00613, Doc. 170 ¶¶ 58, 93 (W.D.N.Y. Oct. 31, 2014). Specifically, the original complaint in *Takemoto* was filed on July 18, 2011—only seven months after the implementation of Section 111 reporting for first-party workers' compensation and no-fault claims and well before the implementation for third-party liability claims. (*See* CM/ECF for W.D.N.Y., No. 1:11-cv-00613 ("*Takemoto* CM/ECF"), Doc. 1). Additionally, the only post-implementation factual allegations therein merely state that Dr. Takemoto offered his Section 111-compliance services to several insurers, who ultimately declined. (*See Takemoto* CM/ECF, Doc. 170 ¶¶ 85, 104–06, 175, 132, 134, 136–39, 141–42). The amended complaint fares no better, as it largely reiterates the pre-implementation factual allegations contained in the original complaint and fails to include any factual allegations after early 2011. (*See id.* ¶¶ 89, 112, 118, 142–145, 158, 180–81, 192, 202, 219, 235, 242, 248–49, 253, 257). In other words, *Takemoto*'s pre-implementation allegations were wholly prospective, and *Takemoto*'s post-implementation allegations were wholly speculative, as to whether insurers were complying with Section 111.

*Hayes* alleged that far from ignoring the new Section 111 requirements, Section 111 had already had a salutary effect and "raised the consciousness of liability insurers" even before implementation. *U.S. ex rel. Hayes v. Allstate Ins. Co.*, No. 1:12-cv-01015, Doc. 21 ¶ 377 (W.D.N.Y. April 22, 2014). *Hayes*'s allegations are the opposite of Appellants' allegations.

The complaint in *Hayes* was filed on October 23, 2012, after the full implementation of Section 111 reporting. However, the only post-implementation factual allegations involve general release forms that insurers used from 2011 to 2012, which allegedly concealed their obligation to reimburse Medicare. (*See* CM/ECF for W.D.N.Y., No. 1:12-cv-01015 ("*Hayes* CM/ECF"), Doc. 1 ¶¶ 201–03). This is true of the amended complaint as well, which added no further post-implementation factual allegations. (*See Hayes* CM/ECF, Doc. 21 ¶¶ 402–04). Moreover, none of the factual allegations contained in either the original complaint or the amended complaint involves an insurer's failure to properly report under Section 111. To wit, the amended complaint explicitly disavowed that the action involved Section 111 reporting at all. (*See id.* ¶¶ 374–79 ("The above cited section relative [sic] the failure to 'report' is entirely distinct and totally independent of the MSP sections and responsibilities to reimburse and repay under which this suit is bought [sic]. This suit is directed at the simple proposition that Medicare is entitled

and required to be repaid its medical expenditures upon resolution of a personal injury claim as demonstrated and documented by the general release.")).

There is not a single "public disclosure" showing primary payers were submitting incomplete or inaccurate Section 111 until Appellants' complaint was unsealed. *Hayes* alleged that Section 111 "raised the consciousness of liability insurers" even before implementation. (*Hayes* CM/ECF, Doc. 21 ¶ 377). And, at the time the information in *Takemoto* was gathered, there could be no violations of the law for conduct yet to occur. *Takemoto* merely offered a prediction that primary payers would not comply with Section 111. Moreover, at the time Dr. Takemoto alleged there were no efforts by primary payers to comply with Section 111, any Government investigation at the pre-implementation stage would not have uncovered the primary payers enlisting ISO for Section 111 reporting. *See Phone Recovery Servs., LLC v. Verizon Wash., DC, Inc.*, 191 A.3d 309, 317 (D.C. 2018) (stating public disclosure bar is triggered when the inference of fraud puts the "government *squarely* upon the trail of the alleged fraud.") (emphasis added) (citations and quotations omitted)

Had the district court appropriately undertaken the multi-factor test, as articulated in *Bellevue,* in evaluating *Takemoto* and *Hayes*, the district court would have determined that Appellants' allegations were not "substantially the same". *See Bellevue*, 867 F.3d at 719. As to the first factor—"whether relators present genuinely

new and material information beyond what has been publicly disclosed"—Appellants alleged, unlike *Takemoto*, that the Insurer Defendants had processes in place with the help of ISO for Section 111 reporting, and unlike *Hayes*, Appellants made no allegations regarding settlement releases. (*See* Am. Compl., R.20). Further, Appellants' proposed SAC alleges, for the first time in any complaint, that the Insurer Defendants own a vast majority of ISO stock and are members of ISO's Board of Directors. (*See* Proposed SAC, R.426-1, Page ID #6574-6580, 6586-6587).

The second factor—"a different kind of deceit"—favors Appellants as well. *Hayes* alleged the deceit occurred because of settlement releases, and specifically stated Section 111 had a salutary effect on primary payers. (Hayes Complaint). Dr. Takemoto merely alleged he was not hired to implement the "impending" Section 111 reporting requirements, and therefore the primary payers did not have processes in place for the forthcoming Section 111 reporting requirements. (*See Takemoto* CM/ECF, Doc. 170 ¶ 61). Here, Appellants allege that the Insurer Defendants *did* have reporting processes in place with the help of ISO, and that the deficient systems the Insurer Defendants used in beneficiary enrollment and claim adjudication caused the false claims to be submitted. (*See* Am. Compl., R.20, Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523).

The third factor—"independent investigation and analysis to reveal any fraudulent behavior"—drives home the point that Appellants' allegations are not

"substantially the same" as the purported public disclosures. This factor requires this Court to compare the "public disclosure" with the allegations of the complaint and determine if the relator would have been required to investigate further to ascertain fraud. In *U.S. ex rel. Heath v. Wis. Bell, Inc.*, the appellate court reversed a public disclosure dismissal and determined that "[Relator] is not one of the opportunistic plaintiffs who have no significant information to contribute.... Through [Relator's] own investigation and initiative, [Relator] established that the schools were being charged prices well above the [lowest corresponding price]…and brought genuinely new and material information to the government's attention." 760 F.3d 688, 692 (7th Cir. 2014) (citations and quotations omitted). As stated above, *Takemoto* alleged there were no processes in place to comply with Section 111, and *Hayes* alleged that Section 111 had raised primary payers' conscious of reimbursing Medicare under the MSP Act. Following these prior disclosures as pleaded, any Government investigation would have led to a dead end.

Appellants' own investigations involved cross referencing several sources of information, including accident reports, CMS reports, court dockets, claims data, and deposed the individuals responsible for Section 111 reporting, thereby discovering that the primary payers do have a (deficient) process in place, with the aid of ISO, for Section 111 reporting. (*See* Am. Compl., R.20, Page ID #455-560; Proposed SAC, R.426-1, Page ID #6558-6583). Appellants' also ascertained and

provided examples of instances where MAO were not notified of the Insurer Defendant's existence (due to deficient Section 111 reporting processes) and the MAO provided reimbursement for the accident-related medical expenses, which led to the MAO submitting the claims to CMS for capitated payment calculation as required under the Social Security Act. *See* 42 U.S.C. § 1395w-24(a)(6). (*See* Am. Compl., R.20, Page ID #486-503). Accordingly, unlike *Hayes* and *Takemoto*, Appellants bring facts and allegations from after the implementation of Section 111 reporting and, as a result, allege an entirely different time period than the publicly disclosed allegations. Therefore, the fourth factor goes in Appellants favor.

Last, unlike *Hayes* and *Takemoto*, Appellants were able to ascertain the Insurer Defendants' policy implementation process for adjudicating claims, including discovering that, while they do not regularly receive requisite information under Section 111 during claim adjudication, they may inadvertently obtain Social Security and other required information at the time of policy creation. (*See* Am. Compl., R.20, Page ID #336, 446-447, 460, 462). Appellants also discovered that, even if the Insurer Defendants do obtain this information, they do not bring that information through to the claims adjudication phase and ultimately fail to report responsibility for the payment of the accident-related medical expenses. (*See id.*). The Insurer Defendants' willing disablement of being able to report properly under Section 111, are vital facts that were not in the public domain. The only facts in the

public domain concerned (1) primary payers use of creative releases to avoid repayment under the MSPA, and (2) primary payers not having processes in place for upcoming Section 111 reporting and declined Dr. Takemoto's consulting services.

For the foregoing reasons, the district court erred in dismissing with prejudice Appellants' Amended Complaint under the public disclosure bar.

B. Appellants Are Original Sources

Even if the district court found there to be a prior public disclosure of the scheme alleged herein, the district court was required to undertake the original source analysis as required under 31 U.S.C. § 3730(e)(4)(A). *See U.S. ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 525 (6th Cir. 2020). The Court has held that, even if a relator's claim is substantially the same, the relator "may still clear the public-disclosure bar under the original source exception if he has proffered independently obtained information that materially adds to the public disclosures. *Id*. (internal quotations and citations omitted). The amended public disclosure bar defines original source in two ways: (1) an individual who "prior to a public disclosure under subsection (e)(4)([A]) has voluntary disclosed to the Government the information on which allegations or transactions in a claim are based; or (2) one who has knowledge that is independent of and materially adds to the publicly disclosed

allegation or transactions, and who has voluntarily provided the information to the Government before filing an action. *Id*. at 526-27.

Here, Appellants have knowledge that is independent of and materially added to the information in the public domain and provided that information before filing the action. This Court has approved of the approaches taken by both the Ninth and Tenth Circuits in determining if a relator has materially added to the publicly available material. *See id.* at 527.

In *U.S. ex rel. Reed v. Keypoint Gov't Sols*., 923 F.3d 729 (10th Cir. 2019), the Tenth Circuit was faced with the contours of the amended original source exception to the public disclosure bar. *See id*. at 759. The district court in *Reed* dismissed the case due to the public disclosure bar and found that the relator did not qualify under the amended original source exception. *See id.* at 741. In overturning that ruling, the Tenth Circuit announced the materially add standard is present when "a relator who discloses new information that is sufficiently significant or important that it would be capable of influencing the behavior of the recipient – i.e. the government – ordinarily will satisfy the materially-adds standard." *Id*. at 757 (quotations and citations omitted). The Tenth Circuit held that a way to distinguish between new but immaterial information and material additions, depends on *the level of detail* in the public disclosures; *the fewer questions the public disclosures answer, the more room there is for a relator's allegations to add material information*. *Id*. at

756 (citing *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016)).

In *Reed*, for example, the relator brought specific examples of scienter, and the Tenth Circuit found that this is the type of "materially added" information qualifying an individual under the original source exception. *See Reed*, 923 F.3d at 761. While not limiting the definition of "materially added" to only additional information regarding scienter, the Tenth Circuit observed that FCA cases often turn on the issue of scienter and, considering the Government generally does not have evidence of guilty knowledge ahead of time, evidence of such information materially adds to the publicly disclosed materials. *Id*. at 761. The *Reed* Court found that the additional facts provided by the relator "had the effect of expanding the scope of the fraud revealed in the public disclosures and introducing knowledge of scienter that is not specifically contained in a qualifying disclosure." *Id*. at 762 (citations omitted). Further, when making this determination, the Tenth Circuit explained that "we base our holding on the *combined, synergistic effect* of the allegations of distinct misconduct in the [Scheme] and the related and intertwined allegations detailing [Defendant's] knowing efforts to cover up [the Scheme's] violations. *Id*. at 763 (emphasis in original) (citations omitted).

When examining what questions the public disclosures answered, this Court needs to look at the granular statements of the public disclosures, as the *Reed* court

did. *See id* at 760 (noting while fraud in the industry was publicly disclosed, the cover up of such fraud was not publicly disclosed). Such a granular review is necessary, given the cautions of comparing public disclosures at "a very high level of generality." *U.S. ex rel. Holloway v. Heartland Hospice, Inc.*, 386 F. Supp. 3d 884, 898 (N.D. Ohio 2019) (citing *U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 935 (7th Cir. 2012)).

For example, *Takemoto* made the following allegations:

- Relator Takemoto has extensive experience in the MSA services industry helping insurers implement MSP compliance programs. (*Takemoto* CM/ECF, Doc. 170 ¶ 48).
- From 2008 to 2010, Dr. Takemoto contacted insurers regarding the new reporting requirements and to pitch his services. (*Id*. ¶ 55).
- *In 2010, Dr. Takemoto saw further business opportunities in the looming MMSEA Section 111 reporting requirement*, exposing MSP noncompliance and the increased risk of reverse false claims since the FERA passage. (*Id*. ¶ 58 (emphasis added)).
- Dr. Takemoto's presentation advised insurers on MSP repayment requirements, *the potential impact of MMSEA Section 111 reporting*, requirements, and the potential FCA liability each insurer faced for noncompliance. (*Id*. ¶ 59 (emphasis added)).
- "[I]n 2009, Dr. Takemoto approached Progressive ... to perform Mandatory Insurer Claims reporting to Medicare *as required by the impending MMSEA 111 legislation*. (*Id*. ¶ 163 (emphasis added)).
- "Mr. Belk [from Travelers] wrote in a May 13, 2011 email, 'Hello, Kent. I assure you I am not ignoring you. I've been very busy on a number of fronts, and it's proven difficult to assemble the people I need to speak with about this issue. ...' Travelers has made no effort to retain Relator or, to Relator's knowledge, otherwise to correct its lack of a complete MSP compliance program." (*Id*. ¶ 181).
- "Dr. Takemoto ... had a meeting with [Sullivan] in the Parsippany office, along with ... , Zurich's Medicare Reporting Account Manager on November 9, 2010, during which he explained the need for Zurich

to develop a comprehensive compliance program covering guidelines for avoiding False Claims liability. ... On May 26, 2011, [Sullivan] wrote to Dr. Takemoto, '... [Zurich/Farmers] are not looking to move forward at this time,' and Zurich/Farmers instead would begin to develop their own internal compliance program." (*Id.* ¶ 192).

Noticeably absent from these allegations is any information regarding the Insurer Defendants' reporting processes post-Section 111 implementation. Likewise, there was absolutely no indicia of scienter. The only thing the above allegations show is that the industry was having discussions on how to undertake "*impending*" or "*looming*" requirements, and the primary payers opted to create internal mechanisms to report, rather than hire Dr. Takemoto as a third-party contractor. See Takemoto Am. Complaint at ¶ 61. *Takemoto* does not even state that these internal mechanisms after the primary payers had an opportunity to create them were deficient for Section 111 reporting. *Takemoto* likewise does not state that the primary payers *did hire a third-party contractor* for Section 111 reporting, i.e., ISO. The primary payers simply *did not hire Dr. Takemoto* for Section 111 reporting and that is *all* that *Takemoto* alleged.

Appellants provide the missing scienter because unlike *Takemoto*. Appellants provided actual claims that went through Appellant's deficient processes, (*see* Am. Compl., R.20, Page ID #486-503), and testimony from primary payer executives *years after* the opportunity to implement processes for Section 111 reporting, (*see id.*, Page ID #504-538). Specifically, the primary payers admitted that they did hire

a third-party contractor ISO to implement Section 111 reporting requirements, and Appellants provided testimony of primary payers outlining the deficiencies in the reporting process, including a willful disablement through the policy implementation process of obtaining all the required information. (*See id*.).

Additionally, Appellants provided specific initials of the Medicare beneficiaries injured in auto accidents; the date the auto accident occurred; the health insurers' name who had a Medicare contract and provided reimbursement for the accident-related medical expenses; what the accident-related injuries were; and the procedures that were the cause of the medical expenses the MAO paid. (*See id*., Page ID #486-503). Appellants also provided the auto policy number, the costs of these medical expenses and whether or not the claim was submitted to ISO. (*See id*.).

Moreover, Appellants provided specific independent knowledge of ISO's claims database and the Insurer Defendants' business practice in using this database, information that was never previously available to the Government. (*See id*., Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523). ISO's database houses almost the entirety of the auto insurance industry's claims, including the Insurer Defendants. (*See id*.).

What's more, Appellants also provided statistical data demonstrating the number of instances wherein a Medicare beneficiaries' accident-related medical expenses went reported and unreported to CMS. (*See id*., Page ID #455-456). By

way of example, the State Farm Group Defendants failed to report over 26,500 instances to CMS. (*See id.*). For context, as shown in the figure below, the State Farm Group Defendants had over 34,000 claims related to Medicare beneficiaries' accident-related medical expenses and only reported a little over 7,500 instances, meaning State Farm was not reporting 77.8% of the time. This further demonstrates the specific instances of scienter that Dr. Takemoto failed to provide to the Government, and precisely what makes Appellants original sources under the public disclosure bar.



| | CSAA Insurance Group | Kemper Corporation Group | National General Group | Erie Insurance Group | Farmers Insurance Group | Auto Owners Group | United Services Automobile Association Group | Auto Club Enterprises Insurance Group | Travelers Group | Libert Mutual Group | Nationwide Corporation Group | Progressive Group | Berkshire Hathaway Group (GEICO) | State Farm Group |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Reported to CMS | 10 | 59 | 6 | 105 | 248 | 345 | 624 | 835 | 979 | 1,550 | 3,525 | 2,150 | 1,449 | 7,535 |
| Not Reported to CMS | 5 | 23 | 77 | 27 | 78 | 296 | 736 | 1,059 | 1,301 | 2,636 | 1,163 | 10,435 | 19,660 | 26,528 |

Accordingly, the district court's failure to analyze whether Appellants were original sources was contrary to binding case law, and dismissal with prejudice on this basis of the public disclosure bar was erroneous.

## IV.   The District Court Erred in Finding that Appellants Did Not Adequately Allege a Conspiracy

The district court found that Appellants failed to provide allegations that supported the existence of any agreement between and among the Insurer Defendants and ISO.[21] (*See* Order of Dismissal, R.490, Page ID #8439). This finding was erroneous.

A civil conspiracy, including one under including  31 U.S.C. § 729(a)(1)(c), consists of "an agreement between two or more persons to injure another by unlawful action." *United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991). A relator must allege (1) "that there was a single plan," (2) "that the alleged co-conspirator shared in the general conspiratorial objective," and (3) "that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Id*.

---

[21] The district court also found that dismissal of the conspiracy claim was warranted due to her dismissal of the underlying FCA claim. (*See* Order of Dismissal, R.490, Page ID #8438). For the reasons stated above, the district court's dismissal of the FCA claim was erroneous, and her dismissal of the conspiracy claim on that basis was also erroneous.

The Amended Complaint explicitly alleged that ISO, as the Section 111 reporting clearinghouse for *every* Insurer Defendant, facilitated each Insurer Defendant's obfuscation of their reimbursement obligations and that each Insurer Defendant enacted policies and procedures, in coordination with ISO, to avoid collecting and reporting (through ISO) the requisite information under Section 111. (*See* Am. Compl. R.20, Page ID #336-337, 420, 433, 446-447, 451-453, 464-465, 521-523; *see also id.*, Page ID #507, 511, 521-523, 524, 526, 528, 530 (deposition testimony regarding the use of ISO in Section 111 reporting)). These allegations support a conspiracy claim, as they evince (1) an agreement between ISO and each Insurer Defendant to engage in a plan to under-collect and under-report under Section 111; (2) with the general objective of concealing each Insurer Defendant's reimbursement obligation to Government health plans and their contractors; and (3) Insurer Defendants and ISO engaged in overt acts in implementing their plan, including the adoption of claims processing practices and policies to systematically avoid the requisite data collection and reporting. See *Murphy*, 937 F.2d at 1039. Yet, the district court erroneously ignored these allegations.

Moreover, as Appellants proposed SAC demonstrates, any purported pleading deficiencies regarding the conspiracy claim are easily cured through amendment. In particular, the propose SAC includes allegations regarding particular agreements between ISO and the Insured Defendants; ISO's role in obfuscating the Insurer

Defendants' reimbursement obligation through coordination of their data collection procedures; ISO's pretextual termination and exclusion of MSP WB's access to ISO's database; and the ownership interests of certain Insurer Defendants in ISO and ISO's parent company, Verisk Analytics, Inc. (*See* Proposed SAC, R.426-1, Page ID #6574-6580, 6586-6587). These additional allegations easily cure the purported pleading deficiencies identified by the district court, and as such, "dismissal with prejudice and without leave to amend" was "not appropriate" here. *Newberry*, 789 F.3d at 646.

Accordingly, Appellants did sufficiently allege (and can sufficiently allege) that the Insurer Defendants conspired with ISO. Thus, the district court's dismissal with prejudice of Appellants' conspiracy claim was reversible error.

## CONCLUSION

Based on the foregoing, Plaintiffs-Appellants respectfully request this Court **REVERSE** the district court's order and **REMAND** for further proceedings.

Dated: August 15, 2024          Respectfully submitted,

*/s/ Shereef H. Akeel*
Shereef H. Akeel (P54345)
Adam S. Akeel (P81328)
Samuel R. Simkins (P81210)
Daniel Cermak (P84460)
Emad R. Hamadeh (P86849)
Hayden E. Pendergrass (P86888)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350

Troy, Michigan 48084-4736
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com
Daniel@akeelvalentine.com

John W. Cleary (Fla. Bar No. 118137)
Ryan H. Susman, (Fla. Bar No. 1010444)
MSP RECOVERY LAW FIRM
2701 S. LeJeune Road, Tenth Floor
Coral Gables, Florida 33134
(305) 614-2222
jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com

J. Alfredo Armas (Fla. Bar No. 360708)
ARMAS BERTRAN ZINCONE
2701 S. LeJeune Road, Tenth Floor
Coral Gables, Florida 33134
(305) 461-5100
alfred@armaslaw.com

*Counsel for Plaintiffs-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Appellants certifies pursuant to Fed. R. App. P. 32(g)(1)(C) that Appellants' Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), as this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman font in 14-point size, with footnotes in Times New Roman font, 14-point size.

This Brief contains 12,186 words including footnotes and excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/Shereef H. Akeel*

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA, ex rel.; *et al.*

      Plaintiffs

and

MICHAEL ANGELO; MSP WB, LLC

      Plaintiffs - Appellants

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; et al.

      Defendants - Appellees.

_____

## ADDENDUM: DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

R.1, Page ID #1-63 – Complaint
R.20, Page ID #333-538 – Amended Complaint
R.338, Page ID #1978-2055 – Defendants' Omnibus Motion to Dismiss
R.339, Page ID #2056-2851 – Defendants' Motion for Judicial Notice
R.426, Page ID #6415-6928 – MSP WB, LLC's Amended Motion for Leave to File Second Amended Complaint
R.490, Page ID #8406-8454 – District Court's Dismissal Order
R.492, Page ID #8456-8458 – Notice of Appeal

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of August 2024, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ *Shereef H. Akeel*